# LOCKHEED AIRCRAFT CORP. v.
# UNITED STATES ET AL.

No. 81–1181.   Argued November 30, 1982—Decided February 23, 1983

POWELL, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, STEVENS, and O'CONNOR, JJ., joined. REHNQUIST, J., filed a dissenting opinion, in which BURGER, C. J., joined, *post*, p. 199.

*Warner W. Gardner* argued the cause for petitioner. With him on the briefs were *Richard M. Sharp, Michael S. Giannotto, Jeffrey C. Martin, Carroll E. Dubuc,* and *Nicholas H. Cobbs.*

*Carolyn F. Corwin* argued the cause for the United States. With her on the brief were *Solicitor General Lee, Assistant Attorney General McGrath, Deputy Solicitor General Geller, William Kanter,* and *Katherine S. Gruenheck.** 

JUSTICE POWELL delivered the opinion of the Court.

Under the Federal Employees' Compensation Act, a federal employee may not bring a tort suit against the Government on the basis of a work-related injury, but may seek recovery from a third party. The issue here is whether such a third party may seek indemnity from the Government for its tort liability to the employee.

I

On April 4, 1975, a C–5A aircraft operated by the United States Air Force and manufactured by petitioner Lockheed Aircraft Corp. crashed near Saigon, South Vietnam.[1] Almost 150 people died in the crash, including Ann Nash Bottorff, a civilian employee of the United States Navy. The United States paid death benefits to Bottorff's survivors under the Federal Employees' Compensation Act (FECA), 5 U. S. C. § 8101 *et seq.*

Thereafter Bottorff's administrator filed suit against Lockheed, as the manufacturer of a "defective product," in the United States District Court for the District of Columbia.

---

*\*Dewey R. Villareal, Jr.,* filed a brief for the Britannia Steam Ship Insurance Association Limited et al. as *amici curiae.*

[1] The crash occurred during a mission to evacuate over 250 orphans from Vietnam shortly before the fall of Saigon. The incident is discussed in greater detail in *Schneider* v. *Lockheed Aircraft Corp.,* 212 U. S. App. D. C. 87, 90–91, 658 F. 2d 835, 838–839 (1981) *(per curiam),* cert. denied, 455 U. S. 994 (1982).

He sought damages for Bottorff's wrongful death and for the injuries she suffered prior to her death. Lockheed, asserting a right to indemnification under the Federal Tort Claims Act, 28 U. S. C. §§ 1346(b), 2671–2680, impleaded the United States as a third-party defendant.[2]

Lockheed settled the administrator's claim and moved for summary judgment in the third-party action. The Government did not dispute that it was primarily responsible for the fatal crash, nor did it challenge the terms of the settlement. Rather the Government moved to dismiss the third-party claim on the ground that it was barred by 5 U. S. C. § 8116(c), FECA's exclusive-liability provision:

> "The liability of the United States . . . under [FECA] with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States . . . to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States . . . because of the injury or death . . . ."

The District Court, concluding that § 8116(c) did not bar the indemnity claim, granted summary judgment for Lockheed.

On appeal, the United States Court of Appeals for the District of Columbia Circuit reversed. *Thomas* v. *Lockheed Aircraft Corp.*, 215 U. S. App. D. C. 27, 665 F. 2d 1330 (1981). It concluded that § 8116(c) barred Lockheed's third-party claim against the United States. In reaching this conclusion, the Court of Appeals relied primarily on several decisions by other Courts of Appeals. See, *e. g.*, *Kudelka* v. *American Hoist & Derrick Co.*, 541 F. 2d 651, 658–660 (CA7 1976); *Galimi* v. *Jetco, Inc.*, 514 F. 2d 949 (CA2 1975). The court recognized, however, that its holding was contrary to that reached in *Wallenius Bremen G. m. b. H.* v. *United*

---

[2] Lockheed also asserted other claims against the United States that are not currently before the Court.

*States*, 409 F. 2d 994 (CA4 1969), cert. denied, 398 U. S. 958 (1970).[3]

We granted certiorari to resolve the conflict. 456 U. S. 913 (1982). We now reverse.

## II

Section 8116(c) is specific and detailed. It prohibits actions against the United States by an "employee, his legal representative, spouse, dependents, next of kin, [or] any other person otherwise entitled to recover damages from the United States . . . because of the [employee's] injury or death." Lockheed is not within any of the specified categories. If § 8116(c) applies, therefore, it can only be because Lockheed is an "other person otherwise entitled to recover damages from the United States." The Government argues that the language is broad enough to include Lockheed. We must decide if Congress intended that result.

## A

FECA's exclusive-liability provision was enacted in substantially its present form in 1949. FECA Amendments of 1949, § 201, 63 Stat. 861 (enacting FECA § 7(b)) (currently codified at 5 U. S. C. § 8116(c)). It was designed to protect the Government from suits under statutes, such as the Fed-

---

[3] In *United Air Lines, Inc.* v. *Wiener*, 335 F. 2d 379, 402–404 (CA9), cert. dism'd *sub nom. United Air Lines, Inc.* v. *United States*, 379 U. S. 951 (1964), the court concluded that FECA's exclusive-liability provision does not bar a third-party indemnification action against the United States. The court held, however, that the Government nevertheless was not liable to the third party. Since there was no underlying tort liability on the Government's part toward the employee, there was no basis for indemnification.

We note that the decision whether or not to allow third-party indemnity actions is a problem common to all workers' compensation systems. Professor Larson has described this issue as "[p]erhaps the most evenly-balanced controversy in all of workers' compensation law." Larson, Third-Party Action Over Against Workers' Compensation Employer, 1982 Duke L. J. 483, 484.

eral Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise—the *"quid pro quo"*—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government. See H. R. Rep. No. 729, 81st Cong., 1st Sess., 14–15 (1949); S. Rep. No. 836, 81st Cong., 1st Sess., 23 (1949). This compromise is essentially the same as that found, for example, in the Longshoremen's and Harbor Workers' Compensation Act (LHWCA).[4] See 33 U. S. C. § 905(a).

In *Weyerhaeuser S.S. Co.* v. *United States,* 372 U. S. 597 (1963), the Court considered FECA's exclusive-liability provision and carefully reviewed its legislative history. That case arose out of the collision between an Army dredge and a vessel owned by Weyerhaeuser. A federal employee injured in the collision recovered FECA compensation from the Government and tort damages from Weyerhaeuser. Weyerhaeuser brought suit against the United States under the Public Vessels Act, 43 Stat. 1112, 46 U. S. C. § 781 *et seq.,* seeking the damages that it could have recovered from another private shipowner. Included in its claim, under the admiralty divided damages rule, was the Government's share of the employee's tort recovery.

The Government challenged the inclusion of any part of the tort damages paid to the employee on the ground that FECA's exclusive-liability provision protected the United States from such claims. In particular, the Government ar-

---

[4] The FECA exclusive-liability provision was modeled on the analogous provisions of LHWCA and the New York Workmen's Compensation Law. By 1949 the New York courts already had construed the New York law to permit third-party indemnity actions against the employer. See, *e. g., Westchester Lighting Co.* v. *Westchester County Small Estates Corp.,* 278 N. Y. 175, 15 N. E. 2d 567 (1938); *Gorham* v. *Arons,* 76 N. Y. S. 2d 850 (Sup. Ct. N. Y. Cty. 1947); *Clements* v. *Rockefeller,* 189 Misc. 885, 70 N. Y. S. 2d 146 (Sup. Ct. N. Y. Cty. 1947).

gued—much as it does in this case—that third parties plainly were included within the general phrase "anyone otherwise entitled to recover damages." Brief for United States in *Weyerhaeuser S.S. Co.* v. *United States*, O. T. 1962, No. 65, pp. 5, 8–11. See 372 U. S., at 600. The Court, however, rejected this argument. It first pointed out that the statute was ambiguous. "[T]he general language upon which the Government relies follows explicit enumeration of specific categories: employees, their representatives, and their dependents. Under the traditional rule of statutory construction which counsels against giving to general words a meaning totally unrelated to the more specific terms of a statute, we think the meaning of the statutory language is far from 'plain.'" *Id.*, at 600–601. The Court then reviewed the legislative history of the exclusive-liability provision, and concluded that it had been intended to govern only the relationship "between the Government on the one hand and its employees and their representatives or dependents on the other." *Id.*, at 601. The Court summarized its review of the legislative history as follows: "There is no evidence whatever that Congress was concerned with the rights of unrelated third parties, much less of any purpose to disturb settled doctrines of admiralty law affecting the mutual rights and liabilities of private shipowners in collision cases." *Ibid.* (footnote omitted).[5]

The *Weyerhaeuser* Court reinforced its conclusion with a discussion of the "nearly identical" LHWCA provision. *Id.*, at 602. The Court observed that under *Ryan Stevedoring Co.* v. *Pan-Atlantic S.S. Corp.*, 350 U. S. 124 (1956), a ship-

---

[5] Contrary to suggestions in the dissent, *post*, at 199, 200, 201, there is no indication that the *Weyerhaeuser* Court balanced FECA's exclusive-liability provision against the divided damages rule. On the contrary, the holding in *Weyerhaeuser* relates simply to congressional intent. Whatever Congress might have done, it did not intend FECA's exclusive-liability provision to override the rights of unrelated third parties—including rights asserted under the Public Vessels Act on the basis of the divided damages rule.

owner was entitled to obtain indemnification from an injured longshoreman's employer for damages that were recovered against the shipowner but were based on the employer's negligence. Although *Ryan* relied on the existence of a contractual relationship between the shipowner and the employer, the same result was reached in a series of later cases where "the contractual relationship was considerably more attenuated." 372 U. S., at 603. In *Weyerhaeuser* there was no contractual relationship, but there was a well-established admiralty rule that had "governed with at least equal clarity the correlative rights and duties" at issue in the case. *Ibid.*

## B

The Court's reasoning in *Weyerhaeuser* applies with equal force in the present case.[6] The Government advances the same arguments before us now that it unsuccessfully advanced in *Weyerhaeuser.* To paraphrase the *Weyerhaeuser* Court's conclusion, "[t]here is no evidence whatever that Congress was concerned with the rights of unrelated third parties, much less of any purpose to disturb settled doctrines of [tort] law affecting the mutual rights and liabilities of private [parties] in [indemnity] cases." *Id.,* at 601. Section 8116(c) was intended to govern only the rights of employees, their relatives, and people claiming through or on behalf of them.[7] These are the only categories of parties who benefit from the *"quid pro quo"* compromise that FECA adopts. See *Wallenius Bremen,* 409 F. 2d, at 995.

---

[6] We reject the Government's suggestion that *Weyerhaeuser* was wrongly decided. See Brief for United States 22. We note that in the 20 years since *Weyerhaeuser* was decided, Congress has not modified FECA's exclusive-liability provision to include third parties. This is particularly significant in view of the 1966 codification of FECA, which included amendments to the new § 8116(c). See Pub. L. 89–554, 80 Stat. 542.

[7] As counsel for Lockheed suggested at oral argument, a guardian ad litem for an employee's minor dependent could be an "other person" under § 8116(c). Tr. of Oral Arg. 7–8.

The Government seeks to distinguish *Weyerhaeuser*, but the present situation is nearly identical. Here, as in *Weyerhaeuser*, a third party has been forced to pay tort damages for the death or injury of a federal employee covered by FECA, and the third party seeks to recover a portion of its payment. Here the basis for the suit against the United States is the Federal Tort Claims Act rather than the Public Vessels Act, but that difference is irrelevant. Congress intended § 8116(c) to apply to suits under both Acts without distinction. See H. R. Rep. No. 729, 81st Cong., 1st Sess., 14 (1949); S. Rep. No. 836, 81st Cong., 1st Sess., 23 (1949). Here Lockheed relies on substantive indemnity law,[8] while the private shipowner in *Weyerhaeuser* relied on the admiralty divided damages rule, but this is the same irrelevant

---

[8] The validity of Lockheed's underlying substantive claim is not before us. The District Court ruled that, as a matter of substantive law, indemnity is available to Lockheed against the United States. The Court of Appeals did not find it necessary to rule on this issue.

Since the validity of the substantive indemnity claim is not before us, the LHWCA cases on which the dissent relies, *post*, at 200–202, are entirely irrelevant. In *Halcyon Lines* v. *Haenn Ship Ceiling & Refitting Corp.*, 342 U. S. 282 (1952), decided 4 years before *Ryan* and 11 years before *Weyerhaeuser*, the Court merely held that a substantive right of contribution did not exist in the circumstances of that case. The Court explicitly left open the issue whether such a right to contribution, if it were to exist, would be subject to LHWCA's exclusive-liability provision. 342 U. S., at 286, and n. 12. *Atlantic Coast Line R. Co.* v. *Erie Lackawanna R. Co.*, 406 U. S. 340 (1972) *(per curiam)*, is nothing more than a three-sentence reaffirmation of *Halcyon*.

*Stencel Aero Engineering Corp.* v. *United States*, 431 U. S. 666 (1977), which the dissent finds "similar," *post*, at 202, also offers no support to the Government's position on this point. The issue in *Stencel*, again relating to the underlying substantive claim, was whether the Government's waiver of sovereign immunity in the Federal Tort Claims Act applied to an indemnity action based on an injury to a serviceman. Relying primarily on the military nature of the action, we held that the doctrine of *Feres* v. *United States*, 340 U. S. 135 (1950), precluded the substantive claim without regard to any exclusive-liability provision. It is clear that the Government has waived its sovereign immunity here.

distinction. The Federal Tort Claims Act permits an indemnity action against the United States "in the same manner and to the same extent" that the action would lie against "a private individual under like circumstances." 28 U. S. C. § 2674; see *Stencel Aero Engineering Corp.* v. *United States*, 431 U. S. 666, 669–670 (1977) (citing *United States* v. *Yellow Cab Co.*, 340 U. S. 543 (1951)). The Public Vessels Act permits an action to recover collision damages on essentially the same terms. To the extent that the basis for the underlying cause of action could make any difference, the indemnity theories on which Lockheed relies are as well established as the divided damages rule was in *Weyerhaeuser*.

## C

The most relevant changes since *Weyerhaeuser* have been in the LHWCA Amendments of 1972, 86 Stat. 1251. While these changes are illuminating, they do not help the Government's position. Under the amended LHWCA, an injured longshoreman's employer is no longer liable to a shipowner for tort damages that the shipowner has paid the employee. See 33 U. S. C. § 905(b). Congress thus overruled the result in *Ryan, supra,* and abolished the shipowner's indemnity action. But in so doing, Congress *also* abolished the injured employee's seaworthiness remedy against the shipowner—a strict-liability action that the Court had recognized in *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85 (1946). In other words, Congress abolished the third-party indemnity action only in conjunction with a *"quid pro quo"* to benefit the third parties. Here there has been no FECA amendment to abolish the third-party indemnity action recognized in *Weyerhaeuser*. The Government nevertheless invites us to abolish the action without the benefit of an amendment. We are requested to do this even though Congress has provided no *"quid pro quo"* as it thought appropriate in the LHWCA context. We decline the invitation.

## III

The District Court held that Lockheed had a right to indemnity under the governing substantive law, but the Court of Appeals did not rule on that question. Accordingly, we do not consider it. We adhere to the decision in *Weyerhaeuser*, and hold only that FECA's exclusive-liability provision, 5 U. S. C. § 8116(c), does not directly bar a third-party indemnity action against the United States. We reverse the judgment of the Court of Appeals and remand the case for further consideration consistent with this opinion.

*It is so ordered.*

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE joins, dissenting.

The Court's opinion, and especially its unquestioning application of *Weyerhaeuser S.S. Co.* v. *United States*, 372 U. S. 597 (1963), do not show why this case presents "'the most evenly-balanced controversy in all of workers' compensation law.'" *Ante*, at 193, n. 3. Because I believe the balance tips in the opposite direction, I respectfully dissent.

In *Weyerhaeuser*, the Court found that the plaintiff's right to recover outweighed the limitation of liability provision of the statute. This is not surprising, since the plaintiff's right to recover was based on the ancient admiralty rule of divided damages.[1] The divided-damages rule is basic to admiralty and to the relationships of vessels at sea. Under this rule, Weyerhaeuser had a direct right of action against the United States for the injuries it sustained in the collision. Thus the only issue was whether one item of damage, the recovery of the federal employee against Weyerhaeuser, could be included in Weyerhaeuser's action against the Govern-

---

[1] "In *The North Star*, 106 U. S. 17 (1882), Mr. Justice Bradley traced the doctrine back to the Laws of Oléron which date from the 12th century, and its roots no doubt go much deeper." *Cooper Stevedoring Co.* v. *Kopke, Inc.*, 417 U. S. 106, 110 (1974).

ment. The Court stated that it had long since "held that the full scope of the divided damages rule must prevail over a statutory provision which . . . limited the liability of one of the shipowners with respect to an element of damages incurred by the other in a mutual fault collision. *The Chattahoochee*, 173 U. S. 540." 372 U. S., at 603. We thought that Congress, in enacting § 8116(c), did not show "any purpose to disturb settled doctrines of admiralty law affecting the mutual rights and liabilities of private shipowners in collision cases." *Id.*, at 601 (footnote omitted).

It is true that the *Weyerhaeuser* opinion states that § 8116(c) does not bear on "the rights of unrelated third parties." *Ibid.* This view is not controlling. The Court's finding on the primacy of the divided-damages rule shows that that rule was adequate to overcome § 8116(c) and that the comments on congressional intent were dictum. *Weyerhaeuser holds* that the divided-damages rule is more important than the limitation of liability provision of the statute, and that therefore the latter must yield.

In other cases involving a " 'nearly identical,' " *ante*, at 195, quoting *Weyerhaeuser, supra*, at 602, statute, the Court has found that the limitation of liability aspects of a workers' compensation scheme outweigh an unrelated third party's right to recover. In *Halcyon Lines* v. *Haenn Ship Ceiling & Refitting Corp.*, 342 U. S. 282 (1952), and *Atlantic Coast Line R. Co.* v. *Erie Lackawanna R. Co.*, 406 U. S. 340 (1972) *(per curiam)*, we refused to allow unrelated third-party tortfeasors to obtain contribution from employers who were covered by the limitation of liability provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. §§ 901–950. In each case we thought there was no competing principle as strong as the divided-damages rule that would overcome the limitation of liability aspect of the statute.[2]

--------

[2] In *Kopke, supra*, we reaffirmed *Halcyon* and *Atlantic*. We permitted contribution in *Kopke* because the limitation of liability provision did not

There can be no doubt that a principal purpose of § 8116(c) was to limit the amount that the Government would have to pay on account of injuries to its employees. See S. Rep. No. 836, 81st Cong., 1st Sess., 23, 30 (1949) (Section 8116(c) will lead to "savings to the United States, both in the damages recovered and in the expense of handling the lawsuits"). As the Court pointed out in *Bradford Electric Light Co.* v. *Clapper*, 286 U. S. 145, 159 (1932), any workers' compensation statute exists in part to provide "for employers a liability which is limited and determinate." The balance that must be drawn, then, is between the doctrine that gives Lockheed a right to recover and the limitation on liability provided in § 8116(c). We know that in *Weyerhaeuser* the *right* was found to be more important and that in *Halcyon* and *Atlantic* the *limitation* was found to be more important.

In this case we are presented with a tort indemnity claim presented pursuant to the Federal Tort Claims Act, particularly 28 U. S. C. § 2674. The Court states, without explanation, that this claim is "as well established as the divided damages rule." *Ante*, at 198. However well established Lockheed's claim may be,[3] it is not the same kind of claim that we approved in *Weyerhaeuser* and *Ryan*. Those cases turned on the special relationship between the third party and the employer created by ancient maritime law or by voluntary agreement. The only relationship Lockheed can

apply to the defendant, so the injured plaintiff could have sued him directly. In another LHWCA case, however, we upheld the third party's right to recover. *Ryan Stevedoring Co.* v. *Pan-Atlantic S.S. Corp.*, 350 U. S. 124 (1956), "relied on the existence of a contractual relationship between the [third-party] shipowner and the employer." *Ante*, at 196. The holding of *Ryan* is that a contract that provides for employer liability, like the divided-damages rule, is a sufficiently compelling basis of liability to overcome the limitation of liability principle.

[3] The parties seek to show the status of indemnity actions in 1949, when the statute was enacted. What is important is not whether indemnity actions existed, but whether permitting such actions would be consistent with the limitation of liability principle Congress has enacted.

claim in this case comes from the Government's breach of a duty of care owed to Bottorff. In this respect, Lockheed's claim is like the claims for contribution the Court rejected in *Halcyon* and *Atlantic;* it is an indirect sharing of responsibility among wrongdoers and not a breach of a direct duty to Lockheed.

We considered a similar indemnity claim in *Stencel Aero Engineering Corp.* v. *United States,* 431 U. S. 666 (1977). The underlying injury in *Stencel* was caused when the ejection seat of a jet fighter malfunctioned during a midair emergency, and the Air National Guard pilot was permanently injured. The pilot sued Stencel, the manufacturer of the ejection system, for negligence. Stencel cross-claimed against the United States for indemnity. Its claim, like Lockheed's claim in this case, was that it was at most passively negligent, while the Government's active negligence caused the injuries. Both claims were brought under the Federal Tort Claims Act. The pilot, like Bottorff, was entitled to statutory payments, in that case under the Veterans' Benefits Act.

We affirmed the dismissal of Stencel's cross-claim, even though no limitation of liability statute applied to the case, because we found that the limitation of liability principle of *Feres* v. *United States,* 340 U. S. 135 (1950), precluded Stencel's indemnity claim. We did not consider whether the result would be different if Stencel had relied upon a more direct theory of liability, but *Stencel* does stand for the proposition that an indemnity claim of this kind is not sufficient to overcome a limitation on the liability of the United States.[4]

---

[4] The Court is mistaken when it states that *Stencel* was decided "without regard to any exclusive-liability provision." *Ante,* at 197, n. 8. *Stencel* pointed out that a factor in *Feres* was the compensation paid to servicemen without regard to the Government's negligence. 431 U. S., at 671. It then characterized *Feres* as establishing that the veterans' benefits statute "provides an upper limit of liability for the Government as to service-connected injuries," *id.,* at 673, thus establishing a limitation of liability principle similar to that enacted in § 8116(c). The Court in *Stencel* balanced this

The Court's opinion today does more than permit a new and, in my view, inappropriate kind of claim to defeat the limitation of liability principle. It also greatly expands the liability to which the Government may be subjected on account of injuries to its employees. Both the divided-damages rule and contribution require joint tortfeasors to share liability. An indemnitor, however, is required to pay the full amount of the judgment against the indemnitee.[5] W. Prosser, Law of Torts § 51, p. 310 (4th ed. 1971). This increased liability weighs on the side of refusing to permit recovery in this case.

For these reasons, I am convinced that we should retain the balance our earlier decisions would require. Where a third party has a direct action against the Government that fits into the same category as the claims we have allowed in the past, it may include a claim for damages it has paid to a Government employee. But where the third party's claim is an indirect action based on contribution or indemnity, Congress' clear intent to limit the liability of the United States should prevail. I would affirm the judgment of the Court of Appeals.

---

principle against Stencel's right to recover, 431 U. S., at 672–673, just as a limitation of liability provision is balanced against a third party's right to recover when this question is faced under any other workers' compensation scheme.

[5] In this case, the parties have agreed that the Government will pay only a part of Lockheed's settlement with Bottorff. See App. 105–106; Brief for United States 4, and n. 4. The agreement establishing the proportion the Government will pay was filed under seal in the District Court. Under the Federal Tort Claims Act, however, the Government's liability is determined under state law. There is no reason to believe that future claimants will make similar agreements, and no way for the Court to oblige them to do so.