**Margie ARMSTRONG, et al., Plaintiffs,**

v.

**A.C. & S., INC., et al., Defendants.**

**Douglas ATTRIDGE, et al., Plaintiffs,**

v.

**A.C. & S., INC., et al., Defendants.**

**Ludwig HEINZ, et al., Plaintiffs,**

v.

**A.C. & S., INC., et al., Defendants.**

**No. C81–179M.**

**No. C84–162M.**

**No. C84–164M.**

United States District Court, W.D. Washington.

Dec. 11, 1986.

Truman Castle, Richard Hilfer, Bangs Castle Schnautz & Hilfer, Seattle, Wash., for plaintiffs.

Paul C. Gibbs, Kenneth E. Petty, Seattle, Wash., Williams Lanza Kastner & Gibbs, for third-party claimants and UNARCO.

James A. Murphy, Seattle, Wash., for Johns Manville.

Charles V. Moren, Kenneth L. Cornell, Moren Lageschulte & Cornell, Seattle, Wash., for AMATEX.

JoAnn Bordeaux, Torts Branch, Civil Div., Dept. of Justice, Washington, D.C., for U.S.A.

ORDER GRANTING UNITED STATES' MOTION TO LIFT THE STAY OF PROCEEDINGS AND DISMISSING EAGLE-PICHER'S SEVENTH CLAIM

McGOVERN, Chief Judge.

## INTRODUCTION

This order addresses another issue presented by the third-party action of Eagle-Picher Industries, Inc. (E–P) against the United States for indemnity or contribution. This order will be entered in each of the three cases in which the motions relating to Claim Seven were brought and in which the Court made previous rulings concerning other claims. Previous action by the Court resulted in E–P's claims one through six being dismissed in *Armstrong v. A.C. & S., et al.;* No. C81–179M, *Heinz v. A.C. & S.,* et al.; No. C84–164M; *Attridge v. A.C. & S., et al.,* C84–162M based on this Court's decision in *Lopez v. A.C. & S., et al.,* C84–155M. In *Lopez,* the third-party claims for contribution/indemnity were dismissed because the Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101–8193, precludes the United States from being a tortfeasor by removing its susceptibility to tort liability in return for paying benefits to injured government employees regardless of fault. E–P's eighth and ninth claims raising issues of the Government's knowledge rendering its acts and omissions wanton, willful, reckless, or intentional were also dismissed. E–P's seventh claim wherein it seeks indemnity or contribution based upon the Government's alleged breach of a post-employment duty to warn was stayed pending the Ninth Circuit's decision on the issue of whether post-service duty to warn is barred by the discretionary function exception to the Federal Tort Claims Act in *In re Consolidated United States Atmospheric Testing Litigation,* No. 85–2842 (9th Cir.) and *Broudy v. United States,* No. 86–5553 (9th Cir.) (consolidated for purposes of appeal).

## STAY OF PROCEEDINGS

■ The United States now seeks an order lifting the stay of proceedings and dismissing Claim Seven on the ground that Eagle-Picher has not, and cannot, state a claim under Washington law. The Government states that it wanted to raise this additional issue in its reply brief and discussed the matter with E–P's counsel who insisted a new motion be filed fully briefing the issue.

The United States argues that without reaching the discretionary function issue, the Court may address the post-employment duty to warn issue under Washington law. E–P merely counters saying there is no need to lift the stay because the Ninth Circuit has not yet ruled in the *Atmospheric Testing* and *Broudy* cases.

Because the issue presented in this motion is distinctly different from the discretionary function issue in the cases before the Ninth Circuit, this Court may address the issue without concern for inconsistency with the Ninth Circuit.

The United States' Motion to Lift the Stay of Proceedings is GRANTED.

## POST-EMPLOYMENT DUTY TO WARN

*Arguments of the Parties*

The Government's argument on the post-employment duty to warn issue proceeds from an analysis of the United States as employer under Washington law. Under the Federal Tort Claims Act, the liability of the United States, if it were a private person, is governed by the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b). Under Washington law, there is no specific holding of a post-employment duty to warn, but there is a "continuing duty to warn" found in *Lockwood v. A.C. & S., Inc., et al.,* 44 Wash.App. 330, 722 P.2d 826 (1986). Because a continuing duty to warn arises from the United States' role as employer, however, any cause of action stemming from such a duty is barred

by the exclusivity provision of FECA, 5 U.S.C. § 8116(c). An employer who pays benefits to injured employees in return for being free from tort liability is precluded from being a tortfeasor as to post-employment alleged torts also.

E–P frames the issue as whether despite the FECA the United States owes a duty to a former employee, and, if so, whether a private employer under Washington law has such a duty. E–P argues that while no court has yet addressed the issue of whether the FECA exclusivity provision precludes a former federal employee from suing the United States for post-employment failure to warn, the analogous issue of whether the *Feres* doctrine (*Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) precludes such a lawsuit has been addressed. *Feres* held that "the Government is not liable for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146. In *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir.), *cert. dismissed,* — U.S. —, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985), *dismissed on remand sub nom. In re Consolidated United States Atmospheric Testing Litigation*, 616 F.Supp. 759 (N.D.Cal.), *appeal docketed,* No. 85–2842 (9th Cir.1985), the Ninth Circuit held that the *Feres* doctrine would not bar a serviceman's action for post-service failure to warn for injuries sustained as a result of his exposure to radiation while on active duty. The Court reasoned that although the Government's decision to *expose* the veteran to radiation was barred by the *Feres* doctrine, the *Feres* doctrine would not bar an independent, post-service tort based on the Government's *failure to warn* the veteran or monitor his condition. Thus, concludes the argument, former employees of Puget Sound Naval Shipyard (PSNS) are not precluded under the FECA exclusivity provision (which is identical to the *Feres* doctrine in its effect) from bringing suit against the Government for its failure to warn of, and monitor any injuries arising from, health hazards of asbestos exposure once the Government became aware of such hazards.

Once the FECA has been shown to be no hurdle, E–P next argues that the Washington Supreme Court has not addressed the issue of post-employment duty to warn and that this Court must make a reasonable determination of what the Washington Court would do. E–P first argues that *Lockwood* is inapposite in this context:

1. The issue of the effect of the FECA on the viability of a post-termination duty to warn cause of action is a matter of federal, not Washington, law, and "the question of an actionable duty is an inquiry separate from the application of the *Feres* doctrine." *Broudy v. United States*, 722 F.2d 566, 570 (9th Cir.1983) (*Broudy II*).

2. The issue in *Lockwood* was not whether an *employer* has a post-termination duty to warn. The issue in *Lockwood* was whether a *manufacturer* has a duty to warn an *end-user* of risks associated with the use of the product, which risks were unknown or unforeseeable when the product was initially marketed but later became apparent to the manufacturer.

E–P contends that *Molsbergen* should guide this Court in its determination of what the Washington Supreme Court would rule on the post-termination duty issue. Washington law has developed such that recognition of the duty would be harmonious with present law. For example, Washington has recognized a duty to warn in other contexts: psychiatrist/dangerous patient, landlord/dangerous tenant. Additionally, like California law, Washington has statutes that require employers to furnish a safe and healthful employment environment and to keep records and notify employees of exposures to toxic or harmful substances. RCW 49.17.060(1) and RCW 49.17.220(3).

The Government's reply is essentially that all E–P's arguments are irrelevant. *Analysis*

 The issue before this Court is whether the FECA bars a third party's recovery for contribution where a post-employment duty to warn is asserted. While the FECA does not directly bar a third-party suit, the substantive law of the state may. (*See Lopez v. A.C. & S., Inc.*, No. C84–155M, Order

Granting Motion of United States for Dismissal, pp. 4—12 (W.D.Wash. May 19, 1986), citing, *inter alia, Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983).) Under Washington law, contribution is permitted only between joint tortfeasors. Since the FECA precludes the United States Government from liability other than that provided by the FECA, it cannot be a joint tortfeasor as to an injury covered by the FECA. *Id.,* citing *United Air Lines v. Wiener,* 335 F.2d 379 (9th Cir.), *cert. dismissed sub nom. United Air Lines v. United States,* 379 U.S. 951, 85 S.Ct. 452, 73 L.Ed.2d 549 (1964).

The foregoing analysis was drawn in *Lopez* in the context of a tort allegedly committed against the plaintiff while an employee of the Federal government, *i.e.,* failure to warn the plaintiff PSNS employee of the hazards of exposure to asbestos-containing products. Claim Seven, on the other hand, concerns an alleged tort occurring when the plaintiff was no longer in the Government's employ. If the alleged post-employment tort is not a separate tort, the tort occurring during employment is the only tort, and that tort is within the ambit of the FECA. The FECA precludes the United States from being a joint tortfeasor for purposes of contribution under Washington law. *See Lopez.* Therefore, E–P would have failed to state a claim for contribution under Washington law, and Claim Seven would have to be dismissed.

The following discussion will demonstrate why there is no independent, post-employment tort.

A fair reading of the exclusive liability provision of the FECA, 5 U.S.C. § 8116(c), would not cause it to be applied to the situation where, for example, a former PSNS employee were run over by a U.S. Customs vehicle. The FECA exclusive liability provision cannot insulate the Federal government from all future tortious conduct against a person merely because that person once was a government employee.

The question becomes, therefore, whether the alleged post-employment tortious conduct is properly viewed as causing an injury to be compensated in accordance with the scheme of the FECA. What is the nature of the injury, then, and what is the relationship, if any, to the plaintiff's former employment with the Federal Government?

The allegations as to acts during and following employment will be stated in simple terms. The alleged cause-in-fact of the plaintiff's injury are the asbestos fibers to which the plaintiff was exposed during employment at PSNS. The Government's failure to warn of the hazards of such exposure is the alleged proximate cause of the injury. Presumably, with a warning, greater care so as not to inhale the fibers would have been taken by the employee and the injury avoided. After the plaintiff's government employment terminated, the resulting disease from the asbestos exposure manifested itself, and the plaintiff became eligible for FECA benefits. Also, subsequent to the plaintiff's employment, the Government allegedly learned of the deleterious effects of exposure to asbestos, particularly if it is prolonged. Having learned of this, argues E–P, the Government should have notified the plaintiff; having failed to do so, a separate, actionable tort against the plaintiff occurred.

This failure to warn a former employee is not a separate, actionable tort because the proximate cause of the injury occurred during government employment, and that injury is covered by the FECA. The damage to the plaintiff's health was done at the time of exposure to asbestos fibers, and the tort, if any, also occurred then, when the Government failed to warn its employees of the danger. This is true even though manifestation of the injury may not have occurred until later owing to a latency period associated with asbestos disease. It was during the period of exposure to asbestos fibers that injury could have been prevented. There is no demonstration of a separate, discrete injury caused by the lack of warning after the employee left government service. Since the damaging exposure has already occurred, the conclusion is unavoidable that the second alleged tort is so bound up with the first that it does not exist, and the benefits and restrictions of the FECA should apply. The unwarned of hazard of the exposures occurring during

employment is the efficient cause, unbroken by any intervening or superseding cause, and is, thus, the proximate cause of the plaintiff's injury.

Since the proximate cause of injury occurred during the plaintiff's employment, FECA compensation was available to the plaintiff regardless of fault and without resort to a lawsuit. Accordingly, it would not be fair to allow the plaintiff to sue the Government based on a novel theory of duty and without a showing of an injury caused by other than the unwarned of exposure to asbestos during employment. Since there is no separate, post-service tort on which plaintiff may sue, E–P, perforce, may not bring a third-party action against the Government for contribution on the post-employment failure-to-warn theory. There being but one FECA covered injury, the FECA prevents the Government from being a joint tortfeasor under Washington's contribution law as set forth in *Lopez*.

Under this analysis, it is not necessary to examine further the liability of the Federal government as though it were a private person under Washington law because it is unnecessary to determine whether a post-employment duty to warn exists.

This Court is not bound by the *Molsbergen* decision where the effect of the *Feres* doctrine and the application of California law were analyzed. First, there is no showing that the rationale of the military compensation plan and the *Feres* doctrine are harmonious with and thus aptly analogous to the FECA. Second, and more important, in finding an independent post-service negligent act cognizable under the Federal Tort Claims Act, no rationale was presented demonstrating that the result under the circumstances was consistent with the military compensation plan or fair in light of the relationship of the post-service injury to previous military service. Thus, the element of proximate cause for the alleged injury from the second tort was never analyzed. Finally, as stated earlier, it is unnecessary to reach the duty issue, and the view of the California courts on the matter would be merely advisory in any case.

**CONCLUSION**

This effort to open the door for Government tort liability in spite of a compensation plan formulated to redress injury without the attendant costs of litigation must fail. There is but one injury, the proximate cause of which occurred during the Plaintiff's employment at PSNS. Analogizing cases concerning the *Feres* doctrine is inapt in this context. Addressing the concept of a post-employment duty to warn is irrelevant when there is not a separate injury unrelated to an injury occurring during government employment. For purposes of contribution under Washington law, the United States is precluded by the FECA from being a joint tortfeasor. Thus, E–P's claim for contribution from the United States must fail.

Accordingly, for these reasons, the Government's Motion to Dismiss Eagle-Picher's Seventh Claim for failure to state a cause of action in the *Armstrong, Attridge,* and *Heinz* cases is GRANTED.

The Clerk of the Court shall direct uncertified copies of this Order to counsel of record.