Ottie R. NOBLE, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 99-14328.

United States Court of Appeals,

Eleventh Circuit.

June 29, 2000.

Appeal from the United States District Court for the Northern District of Alabama. (No. 97-02493-CV-BU-M), H. Dean Buttramm, Jr., Judge.

Before BIRCH, BARKETT and ALARCÓN[*], Circuit Judges.

ALARCÓN, Circuit Judge:

Ottie Noble ("Noble") appeals from an order dismissing his complaint and entering summary judgment in favor of the United States in an action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.,* ("FTCA"). We have jurisdiction over this appeal under 28 U.S.C. § 1291. Because there was a substantial question as to whether the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et seq.,* ("FECA") covered the alleged injury and because the Secretary of Labor ("Secretary") determined that the alleged losses fell within the coverage of FECA but were uncompensable thereunder, we affirm.

I

Noble was a painting supervisor with the Federal Bureau of Prisons. He was injured on the job during a mandatory self-defense training session at the Federal Correctional Institution in Talladega, Alabama, on January 27, 1994. Dr. James White, a neurosurgeon, examined Noble on February 14, 1994. Dr. White noted in his examination report that Noble had experienced neck and arm pain subsequent to his injury. Noble continued to experience neck and arm pain in the ensuing months. Noble saw Dr. White again on May 9, 1994. On that date, Noble discontinued reporting for work.

[*]Honorable Arthur L. Alarcón, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

On May 18, 1994, Noble filed with the Department of Labor's Office of Workers' Compensation Programs ("OWCP") a claim for continuing compensation on account of disability.

On Dr. White's recommendation, Noble underwent a cervical myelogram test on May 18, 1994. On June 6, 1994, Dr. White recommended that Noble undergo surgery. Dr. White subsequently submitted a report to the OWCP in which he recommended surgery to treat Noble's condition, which he diagnosed as "cervical strain" and "cervical HNP."

The OWCP notified Noble on June 21, 1994, that it had scheduled an appointment for him to be examined by Dr. Matthew Berchuck, an orthopaedic surgeon, on July 12, 1994, in order to obtain a second opinion regarding Noble's request for OWCP authorization of FECA funding for the surgery. Upon examining Noble and his medical records, which included the results of the May 18, 1994, cervical myelogram test, Dr. Berchuck concluded that additional testing was necessary in order to determine whether surgery was warranted.

In a letter to Noble dated August 15, 1994, the OWCP informed him that it had determined him eligible to receive FECA compensation in the amount of 75% of his weekly rate of pay, or $527.40 per week.

On January 30, 1995, the OWCP notified Noble that it had scheduled an appointment with Dr. Richard Rex Harris, an orthopaedic surgeon, for another opinion regarding Noble's request for authorization of surgery. Dr. Harris examined Noble on February 16, 1995. In his February 21, 1995, report to the OWCP, Dr. Harris stated that Noble would need to undergo additional testing before he could determine whether surgery was warranted.

On April 10, 1995, the OWCP authorized Dr. Harris to perform the additional testing he deemed necessary. Noble declined to undergo the additional testing.

Noble was examined by Dr. J. Finley McRae, a neurosurgeon, on May 3, 1995. Noble consented to have Dr. McRae conduct additional testing. After Noble underwent the additional testing on May 15, 1995, Dr. McRae did not recommend surgery.

Noble then arranged on his own to see Dr. Terry Andrade, a neurosurgeon. On June 15, 1995, Dr. Andrade examined Noble and his medical records. He "strongly recommend[ed]" surgery.

A July 6, 1995, letter from a facility manager with the Federal Bureau of Prisons advised Noble that he had initiated proceedings to bring about Noble's removal from his position. He cited two reasons for taking this action: (1) Noble's failure to provide the updated medical documentation required to support his continuing absence from work; and (2) Noble's physical inability to perform the duties of his position. In the letter, the facility manager described the mechanism through which Noble could respond to the removal proceeding and also noted that the removal would occur no sooner than thirty days from the date Noble received the letter. Although the date of Noble's removal is unclear in the record before us, it is undisputed that Noble lost his job.

Dr. Andrade provided his findings and recommendation to the OWCP in reports dated July 13, 1995, and October 26, 1995. The OWCP authorized surgery on January 3, 1996. Dr. Andrade performed the procedure on January 26, 1996. Noble continued to experience neck and arm pain after the surgery.

On September 18, 1997, Noble filed a complaint pursuant to the FTCA in which he sought to recover $250,000 for the prolonging of his pain and the loss of his job that he alleged resulted from the OWCP's tortious delay in authorizing his surgery. On December 4, 1997, the United States filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). On March 19, 1998, the district court found there was a substantial question as to FECA coverage of the alleged injury, ordered the FTCA action held in abeyance, and directed Noble to file a claim with the OWCP seeking additional compensation under FECA for the prolonged pain and job loss that allegedly resulted from the OWCP's delay in authorizing surgery.

An October 19, 1998, memorandum from senior claims examiner Jennifer Valdivieso to the Director of the OWCP set forth the following rationale for the OWCP's denial of Noble's request for additional compensation under FECA:

Since all compensation payments and work related medical expenses have been paid, and will continue to be paid, Mr. Noble is not entitled to any further payments above and beyond that from this office. Section 8116(c) provides for exclusiveness of remedy with regard to work related injuries and deaths. This section provides that the benefits provided by the Act constitute the exclusive remedy against the United States for employment related injuries or deaths. The injury or death of an employee gives rise to no right to recover damages from the United States exclusive of the Act.

It is regrettable if Mr. Noble has suffered more because of his not obtaining surgical relief however, our office has paid all benefits possible to Mr. Noble consistent with the provisions of the Federal Employees' Compensation Act; therefore, the following conclusion is reached.

Mr. Noble's claim for monetary payment, based on his allegation that the office's delay in authorizing funding of his surgery precipitated physical pain and suffering, loss of income, loss of employment, loss of retirement benefits and loss of quality of life, is hereby denied as there is no provision for such payments under the Federal Employees' Compensation Act.

At the insistence of the district court, Noble requested a review of this determination by an OWCP hearing representative. After reviewing the written record, hearing representative Jacqueline Neugent affirmed the earlier decision in a July 19, 1999, letter to Noble:

Since all compensation payments and work related medical expenses have been paid and will continue to be paid (for the accepted work related conditions) the claimant is not entitled to any additional payments above that which has been approved. His request for reimbursement due to pain and suffering, loss of income, loss of employment, loss of retirement benefits, and loss of quality of life must be denied as there is no provision under the Act for such payments.

After receiving a copy of this denial of Noble's claim, the district court was satisfied that the Secretary had finally determined that the OWCP's delay in authorizing surgery and Noble's prolonged pain and loss of his job fell within the coverage of FECA but were not compensable under the statute's limited remedies.

On September 23, 1999, the district court dismissed Noble's complaint for lack of subject matter jurisdiction. On October 21, 1999, Noble filed a timely notice of appeal.

II

Noble contends that the district court erred in dismissing his claims and entering judgment for the United States because he had a viable FTCA claim against the United States for the prolonging of his pain and the loss of his job that resulted from the OWCP's delay in authorizing surgery. We review de novo the order dismissing Noble's complaint for lack of subject matter jurisdiction and the entry of summary judgment

4

for the United States. *See Woodruff v. United States Dep't of Labor, Office of Workers Compensation Program,* 954 F.2d 634, 636 (11th Cir.1992).

In 1916, Congress enacted FECA to provide benefits to federal employees injured or killed in the course of performing their duties. *See* 5 U.S.C. § 8102(a). The benefits available under FECA are primarily medical expense reimbursement and disability compensation that represents a percentage of the claimant's salary prior to his injury. *See* §§ 8103-07. Congress amended FECA in 1949 expressly to provide that FECA is the federal employee's exclusive remedy against the federal government for on-the-job injuries. *See* § 8116(c). FECA provides that

> [t]he liability of the United States ... under this subchapter ... with respect to the injury ... of an employee is exclusive and instead of all other liability of the United States ... to the employee ... [or] any other person otherwise entitled to recover damages from the United States ... because of the injury ... in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

5 U.S.C. § 8116(c). Section 8116(c) was "designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity." *Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 193-94, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983). "In enacting this provision, Congress adopted the principal compromise—the '*quid pro quo*'—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government." *Id.* at 194, 103 S.Ct. 1033.

The Secretary is authorized to administer and decide all questions arising under FECA. *See* 5 U.S.C. §§ 8145, 8149. Under the authority granted in § 8145(2), the Secretary has delegated responsibility for administering FECA to the Director of the OWCP. *See Woodruff,* 954 F.2d at 637. Once the OWCP determines that a disability or death resulted from a work-related injury as defined by FECA, the claimant is limited to the remedies authorized by FECA, even if a particular type of damage or consequence the claimant suffered is not compensable under FECA. *See United States v. Lorenzetti,* 467 U.S. 167, 169, 104

**5**

S.Ct. 2284, 81 L.Ed.2d 134 (1984) ("Because the United States' liability for work-related injuries under FECA is exclusive, see § 8116(c), respondent cannot recover from the United States for losses such as pain and suffering that are not compensated under FECA.");  *see also Avasthi v. United States,* 608 F.2d 1059, 1060-61 (5th Cir.1979) (where a federal employee's injuries occurred in the course of performing his duties, holding that he was not entitled to elect coverage under the FTCA rather than FECA even though proceeding under the FTCA offered the possibility of a more comprehensive remedy).

It is undisputed in this case that Noble's initial on-the-job injury fell within the coverage of FECA and that the exclusive-liability provision of FECA would bar an FTCA claim by Noble to recover damages for that injury.  Noble maintains, however, that he is not seeking to recover under the FTCA for his initial on-the-job injury, but rather for a different injury:  the OWCP's delay in authorizing surgery, which allegedly resulted in Noble suffering prolonged pain and the loss of his job.  By characterizing the OWCP's delay in authorizing surgery as a separate injury from his initial on-the-job injury, Noble seeks to situate his uncompensated losses outside the coverage of FECA in order to be able to proceed with his FTCA claim.

III

"[A]n injured employee may not bring an action against the United States under FTCA when there is a 'substantial question as to whether or not the injury occurred in the performance of the employee's duty' " so as to bring it within the coverage of FECA. *Avasthi,* 608 F.2d at 1060 (quoting *Bailey v. United States,* 451 F.2d 963, 965 (5th Cir.1971)).  Where a federal employee brings an action against the United States and there is a substantial question as to whether FECA provides the employee's exclusive remedy for the alleged injury, the district court must do what the district court did in the instant case:  hold the action in abeyance pending a coverage determination by the Secretary. *See Concordia v. United States Postal Serv.,* 581 F.2d 439, 442-44 (5th Cir.1978).  A substantial question of coverage exists unless the court determines "as a matter of law that, viewing all of the circumstances, the Secretary could not find FECA coverage of" the alleged injury. *Id.* at 442.

If the Secretary finds no FECA coverage of the alleged injury, the plaintiff is then free to proceed under the FTCA. *See id.* at 444. If the Secretary determines the injury falls within FECA's coverage, the federal courts generally lack jurisdiction to review the Secretary's decision to award or deny compensation for the injury. *See* 5 U.S.C. § 8128(b) ("The action of the Secretary or his designee in allowing or denying a payment under this subchapter is (1) final and conclusive for all purposes and with respect to all question of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise."); *see also Woodruff,* 954 F.2d at 639. This court has held that § 8128(b) does not deprive a federal court of jurisdiction to review a charge that the Secretary violated the Constitution or a "clear statutory mandate or prohibition." *Id.* Noble, however, made no such argument in the district court or in his brief on appeal.

A long line of cases has held that the exclusive-liability provision of FECA precludes an FTCA action by a federal employee for damages resulting from medical malpractice by a government doctor treating an on-the-job injury. *See Sanders v. United States,* 387 F.2d 142, 143 (5th Cir.1967) (per curiam); *see also Lance v. United States,* 70 F.3d 1093, 1095 (9th Cir.1995); *McCall v. United States,* 901 F.2d 548, 550-51 (6th Cir.1990) (collecting cases); *Wilder v. United States,* 873 F.2d 285, 288 (11th Cir.1989) (same). The exclusive-liability provision of FECA states that, when it comes to federal employees injured on the job, liability for FECA benefits is the only "liability of the United States ... *because of the injury.*" 5 U.S.C. § 8116(c) (emphasis added). In *Wilder,* this court found the following to be a "persuasive" rationale for the rule that liability for medical malpractice of a government doctor in treating an on-the-job injury is liability because of the injury:

> [T]he aggravation of [the plaintiff's] initial injuries, suffered while he was indubitably in performance of his duty, should be regarded as resulting from the initial injuries themselves.... [T]hat is the rule at common-law when the claim is for negligence; *the initial wrong is the cause of all that follows, even when there has intervened a succeeding negligent act that produced the aggravation.* We interpret the Compensation Act as a substitute for the whole of the claim that, but for it, would have arisen under the Tort Claims Act.

**7**

873 F.2d at 288 (quoting *Balancio v. United States,* 267 F.2d 135, 137 (2nd Cir.1959)) (emphasis added); *see also Lance,* 70 F.3d at 1095 ("As a matter of textual interpretation, there's a strong argument that liability based on medical malpractice arising out of an injury is liability 'because of the injury.'" (quoting § 8116(c))).

This rationale is even more persuasive in the context of the instant case. Like a government doctor whose intervening malpractice increases or prolongs pain or other damages associated with an on-the-job injury, the intervening delay by the OWCP in processing Noble's request for authorization of surgery does not break the causal connection between Noble's initial on-the-job injury and the pain and job loss Noble suffered while awaiting authorization for surgical treatment of that injury. Indeed, the acts or omissions of the OWCP would be even less likely to break the causal connection than would the malpractice of a doctor. At worst, the OWCP failed to act in a manner that may have curtailed the damages precipitated by Noble's initial injury.[1] The OWCP's acts or omissions did not increase the damages precipitated by the initial injury, as a doctor's malpractice well might.

We therefore conclude that the district court did not err in determining that there was a substantial question as to FECA coverage of Noble's alleged injury and that the coverage determination by the Secretary was therefore necessary before Noble's FTCA claims could proceed. *See Wilder,* 873 F.2d at 287-88 ("We are satisfied, and so hold, that the aggravation of [the FTCA plaintiff's] work-related injuries through the alleged malpractice of treating medical personnel presents a substantial question of coverage under the [Longshore and Harbor Workers' Compensation Act, a statutory scheme that includes an exclusive-liability provision 'identical in all material respects' to § 8116(c) of FECA]."). The district court did not err in ruling that it lacked jurisdiction to review the Secretary's determination that the OWCP's delay in authorizing surgery and the job loss and prolonged pain Noble suffered while he waited fell within FECA's coverage but were uncompensable under the statute's limited remedies.

---

[1]We express no opinion regarding the propriety of the OWCP's handling of Noble's request for authorization of surgery.

The order dismissing Noble's complaint and entering summary judgment for the United States is AFFIRMED.