**Thomas Marshall REDDING, Plaintiff,**

v.

**James A CHRISTIAN, Dir./EEO Officer Asheville VA Medical Center, Defendant.**

**No. 1:00CV261–C.**

United States District Court,
W.D. North Carolina,
Asheville Division.

July 19, 2001.

Thomas Marshall Redding, Black Mountain, NC, pro se.

Richard Lee Edwards, Asheville, NC, for defendant.

## MEMORANDUM OF DECISION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court upon defendant's Motion to Dismiss Complaint. Having considered that motion and reviewed the pleadings, the court enters the following findings, conclusions, and decision.

## I. Findings and Conclusions

### A. Standard

Defendant has moved for dismissal pursuant to Rule 12(b), Federal Rules of Civil Procedure, contending that plaintiff has failed to state a cognizable claim. Rule 12(b) authorizes dismissal based upon a dispositive issue of law. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As the Court discussed in *Neitzke:*

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts ... a claim must be dismissed, without regard to whether it is based on outlandish legal theory.... What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

*Id.,* at 1832 (citation omitted). For the limited purpose of ruling on defendant's motion, the court has accepted as true the facts alleged by plaintiff in the complaint and viewed them in a light most favorable to plaintiff.

### B. Factual Background

The court has considered the factual allegations of the complaint as true. The legal conclusions plaintiff has drawn from such facts and included in his complaint have not been given such deference.

Plaintiff, who is proceeding *pro se,* brings this action against a fellow federal employee, purportedly under 42, United States Code, Section 1983 and "Title 5 Section 552—Freedom of Information and Privacy Act of 1974 on Tort Claim." The defendant is the director of the Veteran's Administration ("VA") Medical Center in Oteen, North Carolina, and is or was plaintiff's employer.

It is plaintiff's contention that defendant "Refused under Title 5 Section 552 Freedom of Information & Privacy Act To Turn over Records under Tort Claim." Further, he alleges that defendant disallowed his applications for disability in 1985 and 1990 and refused to correct "lies" about plaintiff insofar as his following rules and regulations. According to plaintiff, he was injured by defendant in the following ways:

(1) a money judgment was entered against him and in favor of the VA Credit Union;

(2) defendant refused his disability claims and refused to provide him medical treatment; and

(3) defendant made false charges against him under an Employee As-

sistance Program and refused to make a final decision on a case.

Plaintiff seeks damages for such alleged wrongs in the following forms:

(1) "12 million Dollars that VA stole from VA Credit Union";

(2) "VA disability—100% back to 1977";

(3) "Remove Judgement [sic] against Me"; and

(4) "Correct my Credit."

In addition to making such allegations and claims, plaintiff attached a number of documents to his complaint as exhibits. Included among those papers was a September 25, 2000, letter from plaintiff to the VA's Office of General Counsel listing "Refused Records from VA Regional Counsel." Through such letter, plaintiff sought documents concerning the following:

(1) his 1985 disability claim;

(2) the alleged refusal to make a final decision on the Employee Assistance Program case;

(3) the alleged refusal to give the names of VA employees who were on the board of the VA Credit Union in 1990;

(4) the alleged VA cover-up of $12 million dollars allegedly stolen from the VA Credit Union manager;

(5) a North Carolina lawyer's refusal to take plaintiff's case "because the VA own[s] NC Bar Associations"; and

(6) information concerning why his landlord threw him out, allegedly because of a tort claim against the VA.

In addition to the letter, plaintiff also annexed to his complaint a Standard Form 95 Claim for Damage, Injury or Death, dated July 1, 2000. Plaintiff incorporated into such form allegations claiming he had been fired from the VA in 1990 for refusing a doctor's appointment, that he had suffered property damage when the credit union manager had stolen his trailer and private property from him and sold it, and that he had suffered personal injury in the form of stolen property, "false charges of death threat to Director," and "stress on losing everything and false death threats." Plaintiff's claim listed North Carolina Senator Jesse Helms, Congressman Charles Taylor, and the credit union as witnesses, and sought a total of $13 million in damages.

Defendant answered the complaint on February 16, 2001, and on March 27, 2001, this court conducted an Initial Pretrial Conference. Inasmuch as plaintiff is proceeding *pro se* and his complaint was less than clear, the court made inquiry of plaintiff concerning what he sought in this case. Plaintiff informed the court that he wanted all records in the possession of the VA that concern prescriptions he received for Xanax in the course of his treatment by the VA in his capacity as a veteran (not as an employee). Plaintiff's records concerning medical treatment he received in his capacity as a VA employee were in his employee health file, which was produced in plaintiff's earlier case, *Redding v. West*, 1:99CV 184 (W.D.N.C.).

While plaintiff has made allegations in this action concerning alleged employment decisions, it appears to the court that plaintiff is simply seeking production of his health records under the Freedom of Information Act ("FOIA"). It is undisputed that plaintiff could, as a matter of right, simply present at the VA Medical Center's Release of Information Office and ask for a copy of his records. At the Initial Pretrial Conference the government agreed to obtain these materials for plaintiff and send them to him. In accordance with that agreement, counsel for defendant sent to plaintiff all of his medical records that were in the VA's possession on April 9, 2001. The government relates in its mo-

tion (and plaintiff has not contested) that plaintiff personally appeared at the United States Attorney's Office the next day and returned those records, stating that they did not contain any references to his receiving Xanax. The defendant further relates that counsel for the United States mailed those documents back to plaintiff the next day and marked with Post–It notes places where Xanax was mentioned. A few days later, plaintiff returned the documents yet again to the government. On June 5, 2001, plaintiff served a set of 20 interrogatories, which appear unrelated to his quest for medical records or his concern over Xanax.

It appearing that plaintiff has taken another detour away from the FOIA request for medical records and the agreement reached at the pretrial conference, the defendant has now renewed and supported its earlier asserted motions for dismissal.

## II. Discussion

### A. Dismissal of FOIA Claim

▪ Defendant seeks dismissal of plaintiff's FOIA claim in accordance with Rule 12(b)(1), Federal Rules of Civil Procedure, based on a lack of subject-matter jurisdiction. Exhaustion of administrative remedies is required under FOIA before a party can seek judicial review. *Oglesby v. U.S. Department of the Army*, 920 F.2d 57, 61–62 (D.C.Cir.1990).

> The reasons for applying the doctrine of exhaustion of administrative remedies include: (1) it provides the agency with the opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision; (2) top managers of an agency are given the opportunity to correct mistakes made at lower levels, thereby obviating unnecessary judicial review; (3) ignoring administrative processes could weaken the effectiveness of the agency by encouraging people to ignore its procedures; (4) the agency possesses expertise in dealing with complicated and technical facts in certain areas of the law: and (5) resolution of the dispute may involve interpretation and application of agency regulations.

*Kuchta v. Harris*, 1993 WL 87705 (D.Md.) It is plaintiff's obligation to request specific information in accordance with published administrative procedures. 5 U.S.C. §§ 552(a)(1), (2) & (3). The only basis for judicial review is that the proper request was improperly denied. 5 U.S.C. § 552(a)(4)(B).

Inasmuch as the court has an affirmative obligation to determine its jurisdiction, it has considered a letter dated September 15, 2000, from the Veteran's Administration to plaintiff, which plaintiff attached to and incorporated into his complaint. That letter indicates that it was in response to plaintiff's August 14, 2000, FOIA request and informed him that he could obtain his medical records directly from the VAMC's Release of Information Office. It is clear from the materials now before the court that plaintiff never sought administrative review of the agency's response to his FOIA request. Thus, when this action was filed, this court lacked jurisdiction over the subject matter of this case as a matter of law because plaintiff had not sought any administrative remedies, much less exhausted them. The court, therefore, will dismiss plaintiff's FOIA claim for lack of subject-matter jurisdiction.

### B. Dismissal of Tort Claim(s)

Defendant has also moved under Rule 12(b)(6) to dismiss plaintiff's tort claims that have been asserted against VA Medical Center Director Christian, *eo nominee*, the United States, purportedly under 42, United States Code, Section 1983. Reading the complaint in a light most favorable

to plaintiff, he seeks to challenge employment decisions by his federal employer, some dating back to 1985, and credit reporting decisions by his federal credit union.

■ In order to assert an actionable claim under 42, United States Code, Sections 1983, *et seq.*, a plaintiff must allege that a defendant was a state actor. While a private citizen can act under color of state law if "he is a willful participant in joint action with the state or its agents," *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), there is no authority for the position that a federal employee or officer acts under color of state law, even if he works with state actors in pursuing a particular investigation. *District of Columbia v. Carter,* 409 U.S. 418, 424–25, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

■ In an abundance of caution, the court has also considered whether plaintiff can assert the present claims under the Federal Torts Claims Act ("FTCA"), to the extent that any of the alleged wrongdoing happened while he was not a federal employee. An action under the FTCA "shall not be instituted upon a claim against the United States for money damages ... unless the claimant shall have *first* presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). There is no evidence of record that plaintiff has exhausted administrative remedies, if any, that would be available to him. The theory behind the FTCA and the federal administrative process is that complaints of torts committed by federal employees can best be resolved at the agency level. When that process is exhausted and a citizen is not satisfied, jurisdiction will vest in this court. 28 U.S.C. § 2675(a).[1] Lacking any allegation that an administrative claim has been made or exhausted, no claim can be made in this court under the FTCA.

■ Finally, even if plaintiff had used the FTCA as the vehicle on which to bring ·his claims for torts, and assuming proper exhaustion of administrative remedies, he has alleged that a number of these claims arose in his capacity as a federal employee. As such, the Federal Employee Compensation Act ("FECA") would be applicable to such claims. The Supreme Court has left no doubt as to the jurisdiction of federal courts in such situations. In *Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983), the Supreme Court held, as follows:

> [FECA] was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise—the *"quid pro quo"*—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

*Id.,* at 193–94, 103 S.Ct. 1033. Under FECA, the Secretary of Labor makes the final decision, which is not subject to judicial review. 5 U.S.C. §§ 8128(b) & 8145. The Supreme Court has held that such provisions are " 'unambiguous and comprehensive' " and that they bar "any judicial review of the Secretary's determination of FECA coverage.... [T]he federal courts

---

**1.** The Federal Employees Liability Reform and Tort Compensation Act of 1988 makes the remedy against the United States under FTCA the exclusive damage action available for torts committed by government employees acting within the scope of their employment. 28 U.S.C. § 2679(b)(1); *Jordan v. Hudson,* 879 F.2d 98 (4th Cir.1989).

have no jurisdiction over FTCA claims where the Secretary of Labor determines that FECA applies." *Southwest Marine v. Gizoni,* 502 U.S. 81, 89, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991). There is no allegation that plaintiff has made any claim under FECA.

## III. Conclusion

For the reasons discussed above, defendant's Motion to Dismiss Complaint will be allowed and this action dismissed. A judgment reflecting such decision is entered simultaneously herewith.

This Memorandum of Decision is entered in response to defendant's Motion to Dismiss Complaint (# 16).