Ivy Lee LeBLANC

v.

**UNITED STATES of America.**

**Civ. A. No. B–85–1769–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

Jan. 5, 1990.

Richard Schechter, Houston, Tex., for plaintiff.

O. Kenneth Dodd, Asst. U.S. Atty., Beaumont, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

COBB, District Judge.

### I.

#### LIABILITY FACTS

This suit arose from an injury plaintiff Ivy LeBlanc sustained on September 7, 1984, while working as a repairman for Coastal Marine on board the S.S. WASHINGTON. At the time of the injury, the WASHINGTON was in navigable waters and docked at the Coastal Marine docks in Port Arthur, Texas. The WASHINGTON is a public vessel owned by the United States of America. Connecticut Transport, Inc. operated the vessel exclusively in non-

commercial public service for the United States pursuant to a general agency agreement between the United States and Connecticut Transport, Inc.

Plaintiff's job on September 7, 1984, was to weld plate on the upper deck of the WASHINGTON. In order to get to his job site, plaintiff had to board the vessel by the gangway, walk toward the bow on the port side of the main deck, then climb a ladder. Plaintiff's path took him through areas in which Coastal Marine employees were performing extensive amounts of work. This work required removing a large number of the deck plates which formed the main deck. One row of deck plates, however, had not been pulled up, and this row which was approximately three feet wide located at the edge of the vessel, was supposed to form a clear path so that workers could walk upon the deck of the vessel in performance of their duties. On September 7, 1984, this path was cluttered with angle iron, piping, welding leads and hoses. This clutter had existed for several days and perhaps longer.

On the date of the accident, Plaintiff LeBlanc used the cluttered pathway to get to his job site, and while he was attempting to step over a large piece of angle iron left in the pathway, plaintiff tripped on the angle iron, stumbled forward and to his right, and stepped into a hole in the deck which had been created by the removal of one of the deck plates. When the plaintiff stepped into this hole, he twisted and seriously injured his lower back, for which he later underwent serious back surgery.

The majority of the repair work on the WASHINGTON was being performed by Coastal Marine employees; however, a crew of workers from Marine Services Unlimited of Tampa, Florida, was also present painting and cleaning the vessel. Some of these men were working in the same area of the ship as plaintiff, and they had to use the same path plaintiff used at the time of his fall.

The supervisor of the Marine Services employees was Captain Charles Cheney. Captain Cheney, the vessel's port captain, was an employee of the general contractor, Connecticut Transport, Inc., and at the time of the accident he had been living on the vessel for approximately four weeks.

In addition to Cheney's responsibilities supervising over the Marine Services employees, he also had the responsibility to tour the vessel to make general inspections. On these inspections, one of Cheney's duties was to insure there was a clear passageway the length of the vessel. He testified undisputed that it is important for men working on a vessel to have a clear path so they can traverse the vessel to get to their respective work areas without encountering obstructions or safety hazards.

In addition to Captain Cheney, Connecticut Transport, Inc. stationed Robert Kraljevic as the port engineer on the vessel to supervise repairs. Kraljevic's job also included touring the vessel and performing inspections to ensure there was a clear pathway for workmen on the vessel. Kraljevic, however, was called to Mobile, Alabama, on September 6, 1984, by his employer, while Captain Cheney remained with the WASHINGTON. Cheney had only worked as port captain on one other vessel undergoing extensive repairs before September 7.

■ The court finds that on September 7, 1984, there was not a safe and clear passageway on the WASHINGTON. The path furnished for the Plaintiff LeBlanc's use was cluttered with angle iron, welding hoses, scrap metal and other hazardous materials which posed a hazard of tripping, which is what actually occurred. The court finds this hazard existed for several days prior to the plaintiff's fall, perhaps longer. The evidence revealed no effort was made to properly clean the passageway along which plaintiff, Coastal Marine employees and Marine Services Unlimited employees were required to travel to gain the upper levels of the vessel.

The court also finds that on September 7, the pathway on the other side of the vessel, the starboard side, was in even worse condition. That pathway was not only cluttered, but blocked by an angle iron with spikes sticking up in the air.

The court finds that the condition of the passageway on September 7, 1984, was un-

safe and unreasonably dangerous. The presence of various tripping hazards throughout the passageway, as well as the path's proximity to openings in the deck, both violated OSHA regulations and created a serious danger of injury. The court finds that Captain Cheney and Engineer Kraljevic knew of these hazards from their regular tours of the WASHINGTON. During their daily activities, both of them could, would and should have acquired actual knowledge about the condition of the vessel's pathways and their unsafe condition.

The court finds that Cheney and Kraljevic knew that the vessel was in hazardous condition due to the failure to maintain clear passageways. The court finds that Cheney and Kraljevic were aware of the hazardous conditions for a time long enough to have seen and appreciated the hazards involved, and taken remedial action. The fact that the conditions had not been corrected by September 7 gave both of them notice that Coastal Marine could not be relied upon to alleviate the problem and to take adequate steps to protect its employees. Despite having this actual knowledge, defendant made no effort to intervene and remedy the dangerous condition.

■ Additionally, plaintiff established that Captain Cheney owed a duty to the Marine Services employees to maintain a clear passageway, and the plaintiff LeBlanc would have been a beneficiary of this duty. Plaintiff also established that industry custom and practice dictated Captain Cheney had responsibility to maintain a clear passageway. He maintained joint control with Coastal Marine over the passageways and thus had responsibility to insure there was a clear passageway at all times. Finally, plaintiff established that Kraljevic and Cheney maintained control over the repairs taking place on the ship.

## II.

## LIABILITY CONCLUSIONS OF LAW

### A. *JURISDICTION AND VENUE.*

■ Plaintiff filed this suit against the United States pursuant to the waivers of

sovereign immunity contained in the Suits in Admiralty Act, 46 U.S.C.App. § 741, *et seq.*, and the Public Vessels Act, 46 U.S.C. App. § 781, *et seq.* Suit against the United States is clearly proper under both of these statutory provisions. This court has maritime jurisdiction, as the accident occurred on navigable waters and the work involved, the repair of a vessel, is a fundamental maritime matter. Venue is proper in the Eastern District of Texas, Beaumont Division, since the vessel is located in this district and the plaintiff resides here.

### B. *THE UNITED STATES IS THE PROPER DEFENDANT*

■ Section 745 of the Suits in Admiralty Act, 46 U.S.C.App. § 745, expressly provides that:

[W]here a remedy is provided by this Chapter it shall hereafter be exclusive of any action by reason of the same subject matter against the agent or employee of the United States ... whose act or omission give rise to the claim.

*Id.* This exclusivity provision precludes recovery against an agent of the United States in any case where the agent or its employees commit a wrongful act on a public vessel or merchant vessel of the United States under the Suits in Admiralty Act. *See, Doyle v. Bethlehem Steel Corp.*, 504 F.2d 911 (5th Cir.1974). This exclusivity provision also governs any action filed under the Public Vessels Act, 46 U.S.C. App. § 781, *et seq. See, Doyle v. Bethlehem Steel Corp., supra.* Courts have construed this provision broadly in order to eliminate the uncertainty about who an individual should sue for an injury caused by or occurring on a public vessel. *See, Petition of the United States*, 367 F.2d 505, 512 (3rd Cir.1966), *cert. denied*, 386 U.S. 932, 87 S.Ct. 953, 17 L.Ed.2d 805 (1967).

In this case plaintiff seeks to recover, in essence, for the acts or omissions of two individuals, Captain Cheney and Engineer Kraljevic. There is a dispute, however, about whether Cheney and Kraljevic fall within the exclusivity provision of 46 U.S.C.

App. § 745. The issue is whether they were employees of Connecticut Transport, independent contractors but still "agents" of the United States for the purpose of Section 745, or independent contractors whose actions are not within the scope of Section 745. The United States contends that Kraljevic and Cheney were independent contractors, the chain of duty and liability was broken before it reaches the United States. Plaintiff contends they were employees or borrowed servants of the agent, Connecticut Transport, or that they were independent contractors and "agents" of the United States for the purpose of Section 745. If Kraljevic and Cheney did not fall within the exclusivity provision of Section 745, then the United States cannot be held liable for their acts or omissions.

■ In determining whether Cheney and Kraljevic are individuals covered by Section 745, the issue is not whether they are "employees" of Connecticut Transport or "independent contractors." Instead, the proper focus is on their relationship with the United States. The issue is whether they were acting as fiduciaries for the United States, with the United States' consent and subject to the United States' general control and direction. *Petition of United States*, 367 F.2d 505, 509 (3rd Cir.1966), *cert. denied*, 386 U.S. 932, 87 S.Ct. 953, 17 L.Ed.2d 805 (1967); *Cruz v. Marine Transport Lines, Inc.*, 634 F.Supp. 107 (D.N.J.1986), *aff'd* 806 F.2d 252 (3rd Cir.1986). The court holds that both men fall within the exclusivity provision of Section 745.

■ On September 7, 1984, the WASHINGTON was owned by the United States. Connecticut Transport operated the vessel for the United States exclusively in noncommercial public service, acting as a general agent pursuant to a general agency agreement. In operating the vessel Connecticut Transport agreed to act in accordance with the directions and orders issued by the United States. The United States reserved the right to complain about any personnel hired and to require their discharge, as well as the right to discharge any sub-agents or sub-contractors for any

reason by giving Connecticut Transport written instructions. The United States further reserved the right to approve port agents. The vessel's business was to be conducted *for* the United States, in accordance with directions, orders and regulations as promulgated by the United States and in a fashion protecting the interests of the United States.

Connecticut Transport hired Kraljevic and Cheney to supervise the repairs on the WASHINGTON, and the United States had to approve their selection. They were paid by Connecticut Transport and the United States directly reimbursed Connecticut Transport for their wages. The United States was supervising Kraljevic's work on the WASHINGTON. Kraljevic reported to both the Connecticut Transport and the United States. Any repairs other than those planned prior to the vessel entering the shipyard were proposed to Connecticut General by Kraljevic, relayed to the United States and approved by the United States. Any such changes would only be made with United States approval. United States employees inspected the work on the vessel while it was in Coastal's shipyard to ascertain if it was satisfactory. At the end of the job, Kraljevic helped the United States negotiate the final bill with Coastal Marine. These facts support plaintiff's position that Kraljevic and Cheney were working on behalf of the United States.

Given the evidence, the court finds Kraljevic and Cheney to be employees of Connecticut Transport, and for the purposes of the shipyard work and the duties owed in this case, borrowed servants.

Alternatively, even if these individuals were not employees or borrowed servants of Connecticut Transport, the court finds that, given the broad purposes of the Suits in Admiralty Act and the Public Vessels Act, they fall within the exclusivity provision of 46 U.S.C.App. § 745. It is clear they were on the vessel pursuant to a contract of employment with Connecticut Transport, the general agent for the United States. Their selection was approved by the United States, and they were supervising repair work on a United States vessel

and on its behalf. The United States maintained the right to control generally their activities. They were clearly government fiduciaries, as evidenced by the fact that Kraljevic negotiated the final amount of the bill on behalf of the United States. In these circumstances the United States is the proper defendant. *See, Petition of the United States, supra; Cruz v. Marine Transport Lines, Inc., supra.*

## C. *DEFENDANT'S NEGLIGENCE.*

Plaintiff's substantive claim against defendant is based upon 33 U.S.C. § 905(b). 33 U.S.C. § 905(b) provides that if a person covered by the Longshore and Harbor Workers' Compensation Act is injured by the negligence of a vessel, then he is entitled to bring a third-party action against that vessel for negligence. It is undisputed that plaintiff LeBlanc was injured while working as repairman on a vessel in navigable waters, and as such, he is covered by the Longshore and Harbor Workers' Compensation Act.

In *Scindia Steam Navigation, Ltd. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), the Supreme Court provided explicit guidance for Section 905(b) causes of action. It set forth the various duties owed by a vessel owner to a longshoreman working on a vessel. The Fifth Circuit has extended these same basic duties to vessel owners with regard to repairmen. *Hill v. Texaco, Inc.,* 674 F.2d 447 (5th Cir.1982). The duties basically break down into three categories:

1. The duty owed to repairmen prior to and at the commencement of repair operations;

2. The duty owed when the vessel owner actively participates in the repair operation or retains control of part of the vessel during the repair operations; and

3. The duty owed by the vessel owner once the repair operation begins.

This case does not involve a condition that arose prior to or at the start of repair operations. The dangerous conditions in the passageways arose after the start of repair operations. Thus, plaintiff's recovery under 33 U.S.C. § 905(b) depends on his ability to establish that the United States breached one of the duties owed to plaintiff after repair operations began and that the breach was a proximate cause of plaintiff's injuries.

A shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop during cargo or repair operations, "absent contract provisions, positive law or custom to the contrary." *Scindia,* 451 U.S. at 172, 101 S.Ct. at 1624.

While a vessel may have no general duty to inspect once repair operations start, the vessel owner does have a duty if and when it becomes aware of a hazard on the vessel and aware that the shipyard is unreasonably failing to protect its employees from the hazard. In these circumstances a vessel owner has a duty to intervene and remedy the hazard. *Scindia,* 451 U.S. at 175–176, 101 S.Ct. at 1626–1627; *Stass v. American Commercial Lines, Inc.,* 720 F.2d 879, 882 (5th Cir. 1983). In order to establish a breach of this duty plaintiff must show the vessel owner had actual knowledge of both the hazardous condition and the fact that the independent contractor was not adequately protecting its employees. *Helaire v. Mobil Oil Co.,* 709 F.2d 1031 (5th Cir.1983).

Finally, a vessel owner also has a duty, if actively involved in the repair process, to avoid negligently injuring repairmen and to exercise due care to avoid exposing repairmen to harm from hazards that the repairmen may encounter in areas under the vessel owner's active control during the repair operations. *Scindia,* 451 U.S. at 169, 101 S.Ct. at 1623.

In this case, plaintiff seeks recovery on the grounds that defendant breached all of the above-described duties. Plaintiff contends (1) that defendant violated positive law and industry custom by failing to keep a clear passageway; (2) defendant was negligent because it maintained joint control over the passageway and failed to properly maintain it; (3) defendant was

negligent because it was actively involved in the repair process and failed to properly maintain a clear passageway; and (4) defendant was negligent because defendant was aware of the hazardous condition of the passageway, aware that plaintiff's employer was unreasonable in failing to protect its employees from the hazardous condition and failed to intervene to eliminate the hazardous condition. Having reviewed the evidence in this case the court finds the plaintiff has proved by a preponderance of the evidence defendant was negligent on all of these grounds and the defendant's negligence proximately caused plaintiff's injuries and damages.

Plaintiff has also established that defendant has violated positive law. 29 C.F.R. 1915.51(a) provides that an employer shall maintain "good housekeeping conditions" at all times during vessel repairs. "Adequate ... passageways shall be maintained in all work areas. All ... passageways or vessels ... shall be kept clear of all tools, materials and equipment except that which is in use, and all debris.... Hoses and electrical conductors shall be elevated over or placed under the walkway or working surfaces or covered over by adequate cross-over planks." (*Id.*) Connecticut Transport, because it was the employer and supervisor of Marine Service employees working on the WASHINGTON, was required to maintain a clear passageway pursuant to 29 C.F.R. 1915.51(a). Connecticut Transport's inaction is imputed to the United States under 46 U.S.C.App. § 745. This inaction constitutes negligence, and was a proximate cause of plaintiff's injuries.

The court notes the Fifth Circuit reached a similar conclusion in *Turner v. Costa Line Cargo Services, Inc.*, 744 F.2d 505 (5th Cir.1984). In *Turner*, the plaintiff slipped on grease on the main deck while going to get gear. The Court found that the injury occurred in an area of the vessel that had not been assigned to the exclusive control of the stevedore and imposed on the vessel a duty to exercise ordinary care under the circumstances. In the case at bar, plaintiff was injured in an area that was not under the exclusive control of Coastal Marine. Both the United States and Coast-

al Marine maintained control over the passageway. Thus, the United States had a duty to exercise reasonable care under the circumstances. The United States breached this duty and this breach proximately caused plaintiff's injury.

Finally, the court finds that the defendant breached its duty to intervene. The evidence in this case establishes that defendant had actual knowledge for many days of the unreasonably dangerous condition created by the cluttered passageway. Further, the defendant had actual knowledge that it could not rely upon Coastal Marine to protect its employees from this danger, simply by the fact that the danger which violated OSHA regulations, industry custom and common sense about safety, had existed, uncorrected, for several days. The court finds that, in these circumstances, the defendant, once it obtained actual knowledge of both the hazardous condition and that Coastal Marine had not, nor was it likely to remedy such hazardous condition, had a duty to intervene and correct the hazardous condition. Yet, defendant failed to intervene. Such failure was a breach of its duty to plaintiff and was a proximate cause of plaintiff's injuries and damages.

The court concludes that defendant was negligent in several respects and that each negligent act and omission was a proximate cause of the incident made the basis of this suit and of plaintiff's injuries and damages.

### D. *PLAINTIFF'S CONTRIBUTORY NEGLIGENCE.*

Defendant contends that plaintiff was contributorily negligent. Defendant first alleges that plaintiff saw the angle iron, an open and obvious hazard, and simply failed to avoid it. Defendant contends it was plaintiff's fault he tripped on the angle iron.

██ While the law is clear that it is no defense that a hazard is "open and obvious," *Scindia*, 451 U.S. 176, n. 22, 101 S.Ct. at 1626, n. 22; *Lemon v. Bank Lines, Ltd.*, 656 F.2d 110, 114 (5th Cir.1981); *Stass v. American Commercial Lines*, 720 F.2d 879, 882 (5th Cir.1983), nevertheless he can

fail to exercise ordinary care for his own safety. The court finds the plaintiff failed to keep a proper lookout for his own safety, to continue to use the passageway without regard to the conditions which were known, or should have been known to him, in view of his background, experience, training, and knowledge. Had he exercised what the court deems ordinary care, he likely would not have sustained the injury he suffered. He was partly to blame for his own injury. This, of course, will not and does not bar him from recovery, but will diminish his recovery in proportion to the amount his own negligence proximately caused his accident. *The Max Morris*, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586 (1890); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 74 S.Ct. 202, 204, 98 L.Ed. 143 (1953). The court finds the defendant has met its burden of proof, and established from a preponderance of the evidence the plaintiff was contributorily negligent, and such negligence was one of the proximate causes of his injury.

■ Although it is an extremely difficult task for any trier of fact to establish with mathematical certainty the precise percentages of negligence of the defendant and of the plaintiff, viewing the record made in the bench trial of this case in its entirety, and considering the testimony of the witnesses, the exhibits and all the surrounding circumstances, I find the defendant's negligence proximately caused the plaintiff's injuries and damages by two-thirds (⅔), and plaintiff's negligence proximately caused one-third (⅓) of his damages.

### III.

### DAMAGE FACTS AND CONCLUSIONS OF LAW

■ The evidence establishes that as a result of plaintiff's fall on September 7, 1984, he underwent back surgery at L4–L5 to correct a bulging disc at L4–5, which was pinching the nerve root. The surgery has not been successful in relieving plaintiff's pain and allowing him to function at his regular job. As a result of the surgery, plaintiff developed post-surgical scarring known as perineural fibrosis or perinervral scarring, or scarring around the nerve root, which is the body's natural reaction to the surgery. Additionally, LeBlanc also has substantial post-surgical spinal instability. He is limited to employment that does not require continuous lifting, forward bending, working in cramped quarters, climbing stairs or ladders, working on heavy machinery or lifting above 15–20 pounds on a regular basis. He cannot sit for more than two hours at a time, nor should he walk more than two to three hours a day. Plaintiff's treating physician testified that the best plaintiff could hope for was a sedentary job. In a recent medical narrative, written after his deposition and introduced in evidence, the doctor who performed the surgery indicated plaintiff's condition has worsened and the plaintiff is probably incapable of handling even a sedentary occupation. Plaintiff's injury has left him permanently unable to return to any type of useful remunerative work, given his physical limitations, age, education, and prior work experience.

The evidence at trial established that plaintiff was earning about $19,300.00 in each of the two years prior to his injury. The only economic testimony offered at trial was that of plaintiff's expert economist, Dr. Kenneth McCoin. I find Dr. McCoin's economic analysis to be credible. His testimony establishes that the Plaintiff LeBlanc has sustained a past loss of earning capacity of $91,572.00 and, when properly discounted, a future loss of earning capacity of $357,757.00. Plaintiff has incurred medical expenses in the past totaling $43,446.26. Based upon the surgeon's projections, the plaintiff can expect reasonably to incur medical expenses for the remainder of his life in the amount of $157,000.00. Finally, plaintiff's injury caused physical pain and mental anguish. Plaintiff has been hospitalized on eight occasions, during which he has undergone a number of epidural blocks, involving the injection of morphine to alleviate the pain caused by the scarring, and has received medication to treat depression. He is depressed due to his inability to work and his

severe pain. The evidence indicates that plaintiff will probably remain in substantial pain for the rest of his life. Given these facts, the court finds that plaintiff has suffered damages in the past and will suffer, in reasonable probability substantial damages in the future.

The court finds the plaintiff's past damages total $205,018.26, and plaintiff's future damages total $583,757.00. These sums must be reduced by one-third by reason of plaintiff's contributory negligence.

In cases that arise out of 33 U.S.C. § 905(b), pre-judgment interest on damage awards is the rule. *Helaire,* 709 F.2d 1031, 1042; *Webster v. M/V Moolchand, Sethia Liners, Ltd.,* 730 F.2d 1035, 1040 (5th Cir. 1984). The Suits in Admiralty Act provides for pre-judment interest against the United States. 46 U.S.C.App. § 743. The Public Vessels Act, however, does not provide for pre-judgment interest.

With respect to pre-judgment interest only, the court finds that the Suits in Admiralty Act was intended to supplement the Public Vessels Act. The court does not find that the prohibition of pre-judgment interest in the Public Vessels Act reaches over into the Suits in Admiralty Act. The court finds that plaintiff is entitled to pre-judgment interest on his past damages at the rate of four (4%) per cent per annum. *See, Wyatt v. Penrod Drilling Co.,* 735 F.2d 951, 956, n. 4 (5th Cir. 1984). Interest on the past damages shall run at the rate of four (4%) per cent per annum from the date of judicial demand, December 23, 1985.

Finally, Intervenor provided compensation and medical benefits under the Longshore and Harbor Workers' Compensation Act totaling $149,587.00. Intervenor is entitled to recover this sum from the first monies paid to plaintiff.

It is thus, ORDERED that plaintiff recover from defendant the amount of $156,682.20 for past damages; $389,168.00 for future damages, pre-judgment interest on the past damages at the rate of four (4%) per cent per annum from December 23, 1985, to the date of this judgment; post-judgment interest on the past and future damages, as well as on the pre-judgment interest, at the rate of four (4%) per cent per annum from the date of judgment until paid and all costs of court.

Intervenor is entitled to recover from the sums that plaintiff recovers the amount of $149,587.00.