Anthony **TARVER**, Plaintiff,

v.

**UNITED STATES of America and Pan Am World Services, Inc.,**
**Defendants.**

Civ. A. No. S90–0072(P) (R).

United States District Court,
S.D. Mississippi, S.D.

Nov. 27, 1991.

Lawrence Blake Jones, Ford J. Dieth and J. Richard Kanuch, New Orleans, La., for plaintiff.

Stuart M. Gerson, Donald M. Waits and Peter F. Frost, Washington, D.C., for defendant U.S.

Richard P. Salloum, Gulfport, Miss., for defendant Pan Am World Svcs.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This cause comes before the Court on the Motion for Summary Judgment and Sanctions of the Defendant, Pan Am World Services, Inc., ("Pan Am"). Having reviewed the Motion, and the parties' briefs and exhibits related to same, the Court finds that Pan Am's Motion is well taken as to the Plaintiff's claim but is not well taken as to the United States' cross-claim.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, Plaintiff Anthony Tarver ("Tarver") alleges that on or about June 9, 1988, he was employed by Pan Am as a seaman aboard the M/V CLERMONT II, a vessel owned by the Defendant, United States of America. At that time, Pan Am was under contract with the United States to perform certain support services at the John C. Stennis Space Center in Bay St. Louis, Mississippi. Tarver alleges that he was involved in an accident while he was engaged in the process of performing maintenance work on a mooring device located at Lox Dock No. 1 at the Stennis Space Center. Tarver was employed as a tug pilot by Pan Am.

As part of the United States space program, the National Aeronautics and Space Administration ("NASA") owns Stennis Space Center (formerly known as the National Space Technologies Laboratory), through which numerous man-made canals run. Liquid rocket motor tests in support of the United States Space Shuttle Program are conducted at the Stennis Space Center by NASA. In order to perform these tests, rocket fuel is needed at the various testing sites. To transport this rocket fuel between the various testing sites inside the Stennis Space Center, NASA owns the tug boat M/V CLERMONT II and numerous rocket fuel barges. The operation of these vessels is performed specifically and solely for the U.S. Space Shuttle Program. The ultimate control over the tug boat and the barges is with the United States, which has the final word on where the vessels go and what work is to be done.

Before the accident involved in this action, NASA had contracted with Pan Am to provide facility operating services at the Stennis Space Center. In describing the work which Pan Am was to perform, the contract provides in part:

*C.1—Scope of Work*

  A. The contract shall, on the terms and conditions hereinafter set forth, furnish the necessary management, labor, facilities, equipment, materials and services, (except as specified herein to be furnished by the government), and do all things necessary and incidental to provide and perform support services for facility operations at the National Space Technologies Laboratories in support of NASA and other authorized feder-

al and state resident users at the NSTL.

The contract also mentions the use of vessels in the following language:

The contractor will operate the NSTL tug boat within the NSTL canal system and transport propellant barges to and from New Orleans. Other vessel movements may be required for NASA and NSTL tenants in local, intercoastal, and offshore waters on a non-interference basis with the shuttle test program support.

At the precise time of his alleged injury, Tarver was on the main deck of the M/V CLERMONT II, with his right leg straddled over the bulwarks, resting on the vessel's rub rail and his left leg on the deck of the vessel. When the alleged injury occurred, Tarver was attempting to lift up the mooring device while a co-worker was on top of the mooring device eight to ten feet above Tarver, trying to lift the device and adjust the counterweights.

On May 19, 1989, Tarver filed suit in this Court against Pan Am under the Jones Act and for unseaworthiness under general maritime law. Pan Am answered the complaint, denied ownership of the vessel, and asserted that the case should be dismissed because Pan Am was immune from Tarver claims under the Public Vessels Act, 46 U.S.C.App. § 781 *et seq.*, or the Suits in Admiralty Act, 46 U.S.C.App. § 741 *et seq.* Plaintiff's counsel voluntarily dismissed this earlier case in September, 1989. *See* Exhibit 3 to Motion for Summary Judgment.

In October, 1989, Plaintiff filed another suit in the Eastern District of Louisiana against the United States of America ("United States"). The lawsuit there asserted admiralty and maritime claims against the United States under the Public Vessels Act and the Suits in Admiralty Act. Tarver again alleged the same injury on June 9, 1988, while working for Pan Am, as agent for the United States, on the M/V CLERMONT II. Based upon a Motion to Dismiss filed by the United States, the Louisiana action was transferred to this Court on February 2, 1990, and was reas-

signed its present civil action number, S90–0072(P). In November, 1990, Tarver filed a First Amended Seaman's Complaint and added Pan Am as a co-defendant. In his First Amended Complaint, Tarver alleges that the vessel CLERMONT II was owned by the United States and operated by Pan Am. Tarver further alleges that Pan Am was his Jones Act employer and that, together with the United States, Pan Am's negligence was the proximate cause of his injuries.

In answering the amended complaint, Pan Am asserted that it was immune from Tarver's damage claims under the Suits in Admiralty Act and/or the Public Vessels Act. In May, 1991, the United States filed a cross-claim against Pan Am for indemnity and contribution. Pan Am timely answered the cross-claim, asserting that the United States has no right to contribution or indemnity because Pan Am is immune from Tarver's Jones Act and unseaworthiness claims under the Suits in Admiralty Act and/or the Public Vessels Act. In its pending motion for summary judgment, Pan Am seeks to be dismissed from this action and seeks sanctions from Tarver for his alleged refusal to dismiss Pan Am from this lawsuit. Pan Am also seeks summary judgment on the cross-claim of the United States.

## II.

### CONCLUSIONS OF LAW

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). For purposes of ruling upon Pan Am's motion for summary judgment, the Court finds that there are no genuine issues of material fact. In this connection, both Tarver and the United States admit that the vessel on which Tarver was working at the time of his alleged injury was owned by the United States.

Tarver pleads as much in his amended cömplaint. All parties also concede that Pan Am was working under a general contract for the United States at the time of Tarver's alleged injury.

Pan Am's motion for summary judgment is based primarily on the ground that Tarver's claims against Pan Am are barred by the Public Vessels Act, 46 U.S.C.App. §§ 781–790 ("PVA") and the Suits in Admiralty Act, 46 U.S.C.App. §§ 741–752 ("SAA"). In particular, Pan Am relies upon § 5 of the SAA, which provides as follows:

> Where a remedy is provided by this chapter, it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States ... whose act or omission gave rise to the claim.

46 U.S.C.App. § 745. Section 745 is incorporated into the Public Vessels Act by 46 U.S.C.App. § 782.

As one district court recently noted: "It is well settled that if the PVA or the SAA provides a remedy against the United States, there is no recourse against the government agent whose acts gave rise to the claim." *Buck Kreihs Co. v. International Marine Carriers, Inc.*, 741 F.Supp. 1249, 1250–1251 (E.D.La.1990). In this case, application of the exclusivity provision of the Suits in Admiralty Act requires the court to resolve two issues: first, whether Pan Am was an agent of the United States; and second, whether the PVA or the SAA provide Tarver with a remedy against the United States. *See id.* at 1251. Based upon the facts of this case, the Court finds that Pan Am was an agent of the United States and that the Public Vessels Act does provide Tarver with a remedy against the United States.

### A. PAN AM'S STATUS AS AGENT OF THE UNITED STATES

When the vessel in question is not directly owned by the United States, the Court must consider whether the vessel is under sufficient control by the United States to render the vessel one "operated by or for the United States." 46 U.S.C.App. § 741; *Trautman v. Buck Steber, Inc.*, 693 F.2d 440, 444 (5th Cir.1982). In the present case, both Plaintiff and the United States admit that the M/V CLERMONT II was owned by the United States. Thus, the Court need not engage in any inquiry as to the extent of control the United States exercised over the vessel.

■ Insofar as the M/V CLERMONT II was owned by the United States, and specifically utilized for the sole benefit of the Stennis Space Center on behalf of the United States, the Court finds that the vessel was a "public vessel" within the purview of the Public Vessels Act, 46 U.S.C.App. § 781. Quite simply, a "public vessel" is a vessel owned or under demised charter to the United States and used by the government exclusively for a public purpose. *See Blanco v. United States*, 775 F.2d 53, 57–58 (2nd Cir.1985). Again, the Court finds that the M/V CLERMONT II was such a public vessel.[1]

■ The undisputed facts in this case also indicate that Pan Am contracted with the United States in part to "operate the NSTL tug boat within the NSTL canal system ..." *See* Exhibit 9A to Motion for Summary Judgment at Page 18. Generally speaking, a contract operator of a government vessel is an agent of the United States for purposes of § 745. *Buck Kreihs Co.*, 741 F.Supp. at 1251. The Court finds that Pan Am, as the contract operator of the CLERMONT II, was an agent of the United States. In operating the CLERMONT II, Pan Am agreed to act in accordance with the directions and orders issued by the United States. Moreover, the vessel's business was to be conducted solely *for* the United States, in accordance with directions, orders and regulations as promulgated by the United

---

1. Since Tarver's complaint alleges jurisdiction alternatively under either the PVA or the SAA, the Court need not consider whether his action against the United States should have been brought *exclusively* under the PVA. Without question, Tarver has alleged an adequate basis for jurisdiction over the United States.

States. *See LeBlanc v. U.S.*, 732 F.Supp. 709, 714 (E.D.Tex.1990).

### B. DOES THE PVA OR THE SAA PROVIDE TARVER WITH A REM-EDY AGAINST THE UNITED STATES?

■ Because Pan Am was an agent of the government, Tarver has no remedy against Pan Am if the PVA or the SAA provides a remedy against the United States. The PVA provides a cause of action against the United States "for damages caused by a public vessel of the United States." 46 U.S.C.App. § 781. Similarly, the SAA permits libel in personam actions against the United States. 46 U.S.C.App. § 742. As one court has noted, "the PVA appears to have been primarily intended to cover tort claims." *Buck Kreihs Co.*, 741 F.Supp. at 1251. Tarver's claims in this case are traditional maritime tort claims which the Court construes as coming within the scope of the PVA. Additionally, the Court notes that the SAA generally provides a remedy "if principles of maritime law would allow the Plaintiff to state a claim against a private person in the same position as the government...." *See Williams v. Central Gulf Lines*, 874 F.2d 1058, 1062 (5th Cir.1989), *cert. denied*, 493 U.S. 1045, 110 S.Ct. 843, 107 L.Ed.2d 837 (1990). Because Tarver could bring a traditional maritime claim against the United States under the PVA, this Court concludes that § 745 prohibits Tarver from bringing this action against the government's agent, Pan Am, whose acts gave rise to the claim. Pan Am's motion for summary judgment against Tarver must be sustained.

### C. UNITED STATES' CROSS–CLAIM AGAINST PAN AM

■ The United States has filed a cross-claim for indemnity or contribution from Pan Am in the event that the United States is found liable to Tarver. Pan Am moves for summary judgment on the cross-claim. The Court finds that this cross-claim should not be dismissed.

The United States' argument that it is entitled to indemnity or contribution is not based upon any language or provision in its contract with Pan Am. However, the United States contends that Pan Am is subject to the warranty of workmanlike performance inherent in every maritime operational contract. *See United States v. San Francisco Elevator Co.*, 512 F.2d 23 (9th Cir. 1975). As the government points out, "[i]mplied warranties of workmanlike performance may extend to parties who are not in direct contractual relationship." *Todd Shipyards Corp. v. Turbine Service, Inc.*, 674 F.2d 401, 417 (5th Cir.1982), *cert. denied sub nom. Sentry Ins. v. Todd Shipyards Corp.*, 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982). Thus, the United States contends, it is entitled to indemnity from Pan Am for any liability imposed upon the government.

The Court has given careful consideration to the cases cited by the United States on the issue of indemnity. The Court notes that none of these cases apparently involved a suit under the PVA, nor one in which a public vessel was involved.

In this connection, it appears that the question of indemnity in a suit under the PVA is a matter of first impression in this Court. The Court's research reveals no precedent on point either in this district or the entirety of the Fifth Circuit. Nevertheless, the Court is of the opinion that the indemnity cases relied upon by the United States are instructive and persuasive in this action.

In seeking dismissal of the United States' cross-claim, Pan Am again relies upon the exclusivity provisions of the SAA, which states in part that an action against the United States "shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States." 46 U.S.C.App. § 745. The Court construes this language as having no application to the cross-claim asserted against Pan Am by the United States.

■ The Court notes that the subject matter of Tarver's claim against the United States, which sounds in tort, is separate

and distinct from the United States' cross-claim against Pan Am, which sounds in contract. While Tarver's action relates to direct liability for damages he sustained from his alleged injury aboard the CLERMONT II, the United States' cross-claim is concerned with a wholly different subject matter, namely, whether Pan Am should bear the ultimate responsibility for any damages in the event that Tarver obtains a judgment against the United States. The Court holds that the purpose of the exclusivity rule in § 745 was to once and for all designate the United States as the party against whom a plaintiff's claim for loss caused by the government's agent should be directed. *See Smith v. United States,* 346 F.2d 449, 453–454 (4th Cir.1965). Additionally, the Court finds that the exclusivity provision of § 745 was not intended to bar the United States from seeking indemnity from the party actually responsible for any damages assessed against the United States.

The Court notes that one of the fundamental and overarching principles firmly embedded in our tort law is that liability should follow fault. That is to say, the party at fault should bear the responsibility and the liability for that fault. The general maritime law relied upon by Tarver in this case is also designed generally to impose liability upon the negligent wrongdoer. If the facts alleged in Tarver's Amended Complaint are accurate, it appears to the Court that Pan Am was the active tortfeasor while the United States stood by merely as the passive owner of the vessel on which Tarver was working. Yet, Pan Am seeks to obtain absolute exoneration from liability based upon its immunity from suit under the PVA or the SAA.

If Pan Am were to be dismissed from this action without any obligation whatsoever either to Tarver or to the United States, the purpose of both tort and general maritime law, which seek to discourage negligent conduct by imposing liability upon the responsible wrongdoer, would be thwarted. The Court regrets that the provisions of the PVA and SAA do not permit maintenance of a direct action by Tarver against Pan Am. However, since there appears to be no controlling precedent in this Circuit on the issue of indemnification to the United States, the Court writes on a clean slate. As one Court has written: "Admiralty law, like common law, is concerned with safety and efficiency." *Hillier v. Southern Towing Co.,* 714 F.2d 714, 720 (7th Cir.1983). Therefore, in the interest of safety and efficiency, this Court is inclined to recognize and apply in this case the doctrine of "restitution indemnity" as between Pan Am and the United States.

■ As the doctrine of "restitution indemnity" has been defined, that doctrine imposes a duty to indemnify upon a party who was actively negligent when the party who was only passively negligent has been called upon to pay damages. *See Eagle–Picher Industries, Inc. v. U.S.,* 937 F.2d 625, 636–637 (D.C.Cir.1991). In addition to the premise of implied-contractual indemnity espoused by the United States in its response to Pan Am's motion for summary judgment, the Court finds that the doctrine of restitution indemnity is particularly suited to the circumstances of this case and further supports the government's cross-claim against Pan Am. As noted, it was Pan Am's employees who were actively negligent in causing Tarver's alleged injuries, not the United States, which merely occupied the passive role of vessel owner in this instance.

■ Additionally, the Court finds that the two-year limitations period in § 745 of the SAA does not bar the United States' cross-claim against Pan Am. The language of § 745 has been interpreted to bar claims *against* the United States, not claims for indemnity brought *by* the United States. *See e.g., McCormick v. United States* 680 F.2d 345 (5th Cir.1982). Furthermore, it has been held that the statute of limitations does not begin running on a claim for indemnification or contribution until after liability has become fixed. *See Central Rivers Towing v. City of Beardstown,* 750 F.2d 565 (7th Cir.1984); *Sea–Land Service, Inc. v. United States,* 689 F.Supp. 450 (D.N.J.1988). Accordingly, the Court holds that the United States has alleged an ade-

quate and timely basis for indemnity or contribution. Therefore, Pan Am's motion for summary judgment as to the United States' cross-claim will be denied.

### D. PAN AM'S MOTION FOR SANCTIONS

█ Pan Am has also moved for Rule 11 sanctions against Tarver, arguing that Tarver failed to engage in any reasonable inquiry so as to ascertain that his cause of action against Pan Am is without merit. Rule 11 of the Federal Rules of Civil Procedure provides in part that the signature of an attorney or party "constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law ..." Fed. R.Civ.P. 11.

Based upon the fact that this same lawsuit had earlier been dismissed against Pan Am, and the fact that counsel for Pan Am provided cases to Tarver's counsel indicating that Pan Am had no liability in this action, the Court finds that Tarver's counsel failed to adhere to the dictates of Rule 11. In short, the Court is of the opinion that Tarver and his attorney, upon reasonable inquiry—and after having been provided relevant cases by Pan Am—could have and should have ascertained that there was no basis for amending the complaint to bring Pan Am back into this litigation. Accordingly, the Court finds that some proper amount of sanctions against Tarver's attorney, as determined by the Court, are appropriate under Rule 11.

For the reasons set forth above,

IT IS HEREBY ORDERED AND ADJUDGED that the Motion for Summary Judgment of Pan Am World Services, Inc. is sustained as to the Plaintiff's claims against Pan Am;

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's claims against Pan Am are hereby dismissed with prejudice from this action;

IT IS FURTHER ORDERED AND ADJUDGED that Pan Am's Motion for Summary Judgment as to the cross-claim of the United States of America is hereby denied;

IT IS FURTHER ORDERED AND ADJUDGED that Pan Am recover from Plaintiff's attorney, in solido, a reasonable amount of sanctions for its costs incurred after providing appropriate cases to counsel for Tarver, with the proper amount to be determined by this Court;

IT IS FURTHER ORDERED AND ADJUDGED that Pan Am shall submit its affidavit within 30 days setting forth such reasonable attorney's fees and costs incurred after providing counsel for Tarver copies of appropriate cases indicating that Pan Am had no liability to Tarver.

SO ORDERED AND ADJUDGED.