John A. **WALTERS**

v.

**TIDEWATER FLEET, INC.,** et al.

Civ. A. No. 92–4182.

United States District Court,
E.D. Louisiana.

March 30, 1994.

---

Philip Bohrer, Koederitz & Bohrer, James A. George, George & George, Baton Rouge, LA, Dan C. Taylor, Ellisville, MS, for plaintiff.

Charles A. Cerise, Jr., James Denman Bercaw, Gelpi, Sullivan, Carroll & Gibbens, New Orleans, LA, for defendants.

Ruth Morris Force, U.S. Attorney's Office, New Orleans, LA, Michelle T. Delemarre, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, DC, for U.S.

### ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is the motion of defendant Tidewater Marine, Inc. for summary judgment. Tidewater seeks a dismissal of plaintiff's complaint, as supplemented and amended, and dismissal of the cross-claim of the United States. Because plaintiff has already dismissed his complaint as to Tidewater, only the motion for dismissal of the cross-claim of the United States remains. For the reasons that follow, the motion is DENIED.

This motion targets some persistent, and as yet unresolved issues in this circuit.

### I. Background

John A. Walters filed suit against Tidewater Fleet Inc. for injuries that he claims to have received while on board the Barge ORION, a vessel owned by the United States. At the time of his alleged injury, the ORION was in the tow of the M/V PATO GRANDE. The United States and Canal Barge Company, Inc. had a contract for the shipment of external tanks for the space shuttle from Michoud Harbor, New Orleans to the Kennedy Space Center in Florida; government-owned special purpose barges were used. The contract required the contractor to furnish the necessary equipment, material, services, personnel and provisions for the shipment of the tanks on the barges. Canal Barge was required to tow the government barge on an exclusive and continuous tow and agreed to furnish a barge crew consisting of a captain, chief engineer, oiler, cook and two utility personnel.[1]

Zapata Gulf Marine Operators, Inc., a wholly-owned subsidiary of Tidewater, Inc., and Canal Barge agreed that Tidewater would tow the barges from Michoud Harbor to the destinations designated by Canal Barge. At the time of plaintiff's alleged accident, the ORION was carrying a shuttle booster tank to Cape Canaveral, and Mr. Walters was one of the Tidewater employees assigned to the ORION.

In his state court suit, plaintiff alleged that Tidewater was liable for negligence under the Jones Act, 46 U.S.C. § 688, and for the unseaworthiness of the tug the M/V PATO GRANDE and maintenance and cure under the general maritime law.

Tidewater removed this suit to federal court because the case involves a federal question under the Suits in Admiralty Act (SAA), 46 U.S.C.App. §§ 741–52, and the Public Vessels Act (PVA), 46 U.S.C.App. §§ 781–90. On March 1, 1993 U.S. District Judge George Arceneaux, before his untimely death, denied plaintiff's motion to remand. Judge Arceneaux held:

> [T]he barge upon which plaintiff Walters allegedly was injured is owned by the United States of America. Thus his exclusive remedy is under the Suits in Admiralty Act, 46 U.S.C. § 741 *et seq.* (1975) ["SAA"] and the Public Vessels Act, 46 U.S.C. § 781 *et seq.* (1975) ["PVA"], and not under the Jones Act.

> \* \* \* \* \* \*

> Therefore, because the barge involved was owned by the United States and plaintiff's injuries occurred while on that barge, his action is for an injury caused by a United States vessel. *Bowman [v. Pan Amer. World Serv., Inc.],* 704 F.Supp. [695] at 696 [ (E.D.La.1989) (Schwartz, J.) ]

---

1. Paragraph 8(a) of the contract made the tug interests "responsible for all damage or injury to persons or property occasioned through the use, maintenance, and operation of the tugboats or other equipment by, or the action of the contractor [or its employees], agents or contractors."

Additionally, Tidewater is an agent of the United States because its vessel is being operated for the United States. Thus, plaintiff's exclusive remedy against defendant Tidewater is under the SAA and PVA.

Tidewater then answered plaintiff's complaint, asserting that because Tidewater was an agent of the United States and plaintiff's exclusive remedy was under the PVA or the SAA, Tidewater was not liable. Plaintiff agrees with Tidewater that Section 745 of the SAA precludes him from asserting a Jones Act claim against Tidewater because it was an agent of the United States. He has dismissed that claim.

But the United States has filed a cross-claim against Tidewater seeking indemnity or contribution. As grounds for indemnity or contribution, the United States alleged:

> The injuries, if any, sustained by plaintiff were a direct and proximate result of the negligent acts or omissions of Tidewater Marine, its employees, servants or agents.

Tidewater now moves for summary judgment on the cross-claim of the United States. It argues that, as a matter of law, the United States is not entitled to tort indemnity or contribution. This motion once again focuses a tension that exists in the case literature in this circuit.

## II. *Discussion*

Tidewater draws attention to Judge Arceneaux's ruling on the remand issue that it is indisputably the agent of the government for purposes of the SAA. The Court agrees. That issue has been decided. It is Tidewater's agent status that implicates the exclusivity provision of the SAA. 46 U.S.C.App. § 745 provides in part:

> Where a remedy is provided by this chapter, it shall hereafter be exclusive of any other action by reason of the same subject matter against the agent or employee of the United States ... whose act or omission gave rise to the claim.

Tidewater insists that Section 745 precludes the Court from requiring Tidewater to contribute its allocable share towards the plaintiff's claim for damages because it can not be made directly liable to the plaintiff

under the SAA. The Court agrees that Tidewater cannot be required to contribute based on a theory of liability to the plaintiff; however, it is a more expansive theory that defines the result here.

### A.

In *Simeon v. T. Smith & Son Inc.*, 852 F.2d 1421 (5th Cir.1988), *reh'g denied, en banc* 860 F.2d 1255 (5th Cir.1988) and *cert. denied sub nom., Lumar Marine, Inc. v. Simeon*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989) the Fifth Circuit discussed the impropriety of imposing liability on a joint tortfeasor by way of indemnity in the absence of some joint responsibility among the tortfeasors to the plaintiff. The court held that a joint tortfeasor who was also the Jones Act employer of the plaintiff (an injured seaman) could not be required to indemnify its co-defendant for the plaintiff's wife's loss of consortium claims because a Jones Act employer cannot be held liable for loss of consortium damages. *Id.* at 1433–34. The Fifth Circuit explained:

> The traditional view is that there can be no contribution between concurrent tortfeasors unless they share a "common legal liability" toward the plaintiff. F. Harper, F. James, O. Gray, 3 *The Law of Torts* § 10.2 at 46 (2d ed. 1986); W. Prosser & P. Keeton, *supra*, § 50 at 339–40. The contribution action arises from the original obligation that the party cast in contribution owed to the plaintiff. "If there was never any such liability, as where the contribution defendant has the defense of family immunity, assumption of risk, or the application of an automobile guest statute, or the substitution or workers' compensation for common law liability, then there is no liability for contribution." W. Prosser & P. Keeton, *supra* § 50 at 339–340.

*Id.* at 1434 (citations omitted).

If one applies that reasoning here, then Section 745's exclusivity provision must be said to relieve Tidewater of its ordinary Jones Act employer responsibility towards the plaintiff. *See Rollins v. Board of Governors for Higher Education*, 761 F.Supp. 933,

937 (D.R.I.1991). This is the thrust of Tidewater's position.

But *Simeon* goes on. *Simeon* nevertheless doctrinally preserves some circumstances under which a joint tortfeasor can be liable to the co-defendant even though not to the plaintiff:

> Sometimes a "concurrent" tort-feasor who is immune from the plaintiff's direct suit and thus immune from a traditional contribution claim, owes the concurrent tort-feasor some independent duty, or has made some express or implied promise to that tort-feasor so that a "contribution" action is permissible. This type of "contribution" does not arise because of an obligation running from the contributing tort-feasor to the plaintiff; it rather arises because of the relationship between the concurrent tort-feasors themselves. *See Weyerhaeuser Steamship Co. v. United States*, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963); *Ryan Stevedoring Co. v. Pan–Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) (permitting indemnity claim by shipowner against LHWCA employer on grounds that employer had breached its contractual obligation running to shipowner); *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983) (holding that the exclusive liability protection afforded the United States by Federal Employees' Compensation Act, 5 U.S.C. § 1801 *et seq.*, would not bar an indemnity claim by a concurrent tort-feasor, provided there was some substantive law of indemnity on which the claim could be based); *Travelers Insurance Co. v. United States*, 493 F.2d 881, 886 (3d Cir.1974) (discussing *Weyerhaeuser* ).

*Simeon*, 852 F.2d at 1435.

Since Tidewater was the government's agent, does the requisite independent basis exist for imposing a theory of liability on Tidewater that is grounded in a separate contractual duty owed by Tidewater to the government, as opposed to a duty owed to the plaintiff? The Court holds that under present case decisions it does.

### B.

Tidewater was operating the ORION on behalf of the United States and was, therefore, within reach of the warranty of workmanlike performance inherent in every maritime operational contract. *United States v. San Francisco Elevator Company*, 512 F.2d 23, 26 (9th Cir.1975); *Tarver v. United States*, 785 F.Supp. 607, 612 (S.D.Miss.1991).

The government concedes that Tidewater was not in direct contractual privity with the United States, but rightly argues that implied warranties of workmanlike performance may extend to parties who are not in a direct contractual relationship. *Todd Shipyards Corp. v. Turbine Service, Inc.*, 674 F.2d 401, 407 (5th Cir.1982), *cert. denied sub nom.*, *Sentry Ins. v. Todd Shipyards Corp.*, 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982).

In *Ryan Stevedoring Co., Inc. v. Pan–Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), for example, the Supreme Court held that a vessel owner could recover indemnity from a stevedore because the stevedore had breached a warranty of workmanlike performance implied in the contract between the vessel and the stevedore.[2] The government concedes that the Fifth Circuit has been reluctant, at least in dictum, to expand *Ryan* beyond its facts, but it stresses that the court has recognized the viability of *Ryan* indemnity in the personal injury/seaworthiness context. *See Hardy v. Gulf Oil Corporation*, 949 F.2d 826 (5th Cir. 1992).[3]

---

**2.** Congress legislatively overruled *Ryan Stevedoring*, in the longshore context, in 1972. See 33 U.S.C. § 905(b), as amended. Nevertheless, the Court recognized the tort-contract distinction that defines Section 745 here. See *Ryan Stevedoring*, 350 U.S. at 130, 76 S.Ct. at 235. The collateral claim in *Ryan* was permitted because liability "springs from an independent contractual right."

**3.** The *Hardy* court, however, emphasized that it was not presented with a typical *Ryan*-type setting. Thus, *Hardy* seems factually distinguishable. *See Hardy v. Gulf Oil Corp.*, 949 F.2d at 834. It is useful to comment here that the Supreme Court reaffirmed *Ryan* years after Congress amended the Longshore Act to eliminate *Ryan* in longshore claims. *Lockheed Aircraft*

The government urges that this motion focuses a classic *Ryan* setting; the vessel owner, by entrusting its vessel to a contractor who is said to have made the vessel unseaworthy, has become the object of liability without directly contributing to the unseaworthy condition that supposedly caused the accident.

### C.

Not much exists by way of guidance in the case literature. One district court in this circuit has agreed with the government. *Tarver v. United States*, 785 F.Supp. 607 (S.D.Miss.1991). *Tarver* held that Section 745 does not prevent the government's cross-claim in these situations. *Tarver*, however, seems to overlook the doctrinal premise of *Simeon:* in the Fifth Circuit, if a tortfeasor is immune from a direct suit, contribution is not available from that defendant unless a separate and independent basis exists that arises out of the relationship between the tortfeasors.

*Tarver* read the exclusivity provision of Section 745 to reach only claims that are grounded in the same theory of relief and assignment of fault. By way of avoiding Section 745, the court held that responsibility for Tarver's tort claim against the United States should be passed on to the ultimately culpable party, the co-defendant, Pan–Am (a sub-contractor in the same position as Tidewater here). The court wrote:

> While Tarver's action relates to damages he sustained from his alleged injury aboard the [public vessel], the United States' cross-claim is concerned with a wholly different subject matter, namely, whether Pan Am should bear the ultimate responsibility for any damages in the event that Tarver obtains a judgment against the United States. The Court holds the purpose of the exclusivity rule was to once and for all designate the United States as the party against whom a plaintiff's loss caused by the government's agent should be directed. *See Smith v. United States,*

346 F.2d 449, 453–54 (4th Cir.1965). Additionally, the Court finds that the exclusivity provision of § 745 was not intended to bar the United States from seeking indemnity from the party actually responsible for any damages assessed against the United States.

*Tarver* at 613.

This Court partly agrees with the result but not the theory of *Tarver;* if an independent ground exists for the government's cross-claim for indemnity, such as a contractual obligation like the warranty of workmanlike performance, then the claim is not barred by the SAA. To be faithful to the statutory text, such a claim is not "by reason of the same subject matter." However, the *Tarver* court did not actually find or seek a basis for liability that was anything other than the contributing party's (Pan–Am) negligence towards the plaintiff. It felt that Pan–Am, as the actively culpable party in the chain, should not be immune because safety is a national concern in maritime law.[4] The *Tarver* court invoked the conceptual anchor of "restitution immunity" as the basis for the legal duty owed to the government, as main defendant, from the otherwise immune agent of the government. That concept, however, revives the otherwise moribund rules of active and passive tortfeasors that met their end in the doctrine of comparative fault and *Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 499–500 (5th Cir.1982). Moreover, the real character of restitution immunity is tort indemnity. *See Eagle–Picher Industries, Inc. v. U.S.*, 937 F.2d 625, 637 (D.C.Cir.1991). Thus, restitution immunity does not seem to be faithful to the text of Section 745. Finally, *Tarver* 's discussion of imposing liability for plaintiff's injuries on the party actually at fault leaves the decided impression that the court was imposing tort liability because of the incident that harmed the plaintiff, rather than for a breach of a separate duty one tortfeasor owed to another. All this might seem to the reader to be an exercise in dancing on the head of a pin, but this Court's

---

*Corp. v. United States,* 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983).

**4.** The government asserted the warranty of workmanlike performance in *Tarver,* but the court did not conduct its analysis on that basis, or mention it as aiding in the result reached.

analysis must be faithful to applicable existing precedent.

### D.

In this case, the implied warranty of workmanlike performance is in the nature of a contractual duty Tidewater owed to the government; it is independent of any duty the parties owed to the plaintiff. Based on the present state of doctrine in this circuit, the duty of warranty drives this Court's decision.

It must be said that whether the warranty applies here is shrouded in uncertainty, but the Court believes it is obliged to do so. The Court, therefore, will apply the warranty although the Fifth Circuit has rather equivocally considered doing away with it in towage incidents. *See Hercules, Inc. v. Stevens Shipping Co.,* 698 F.2d 726 (5th Cir.1983) (*en banc*). In *Hercules,* the Fifth Circuit noted one scholar's strong criticism of the court's prior willingness to apply the warranty to towage situations: "the warranty of workmanlike service is not applicable to a towage situation and, if extended by an erroneous belief in its applicability, would fly in the face of the rule in [*Stevens v.*] *The White City* [285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699 (1932) ]." *Id.* at 737, n. 25 (quoting A. Parks, *The Law of Tug, Tow and Pilotage,* (2d ed. 1982), p. 29). Although the Fifth Circuit forthrightly acknowledged criticism of the court for applying the warranty to towage contracts, the court expressedly refused to overrule *Stevens v. East–West Towing Co., Inc.,* 649 F.2d 1104, 1109 (5th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1007, 71 L.Ed.2d 298 (1982) in which the court applied the warranty to a towage contract in a personal injury context. Because the Fifth Circuit has not overruled its own precedent, the Court feels bound to apply the warranty, even if it seems to be in scholarly disfavor; *East–West* still appears to be alive, if not altogether well.[5]

Accordingly, because Tidewater is not statutorily immune from the government's crossclaim for indemnity, Tidewater's motion for summary judgment is DENIED.[6]

---

5. The court's unwillingness to reject criticism of the *East–West* line of cases falls far short of a willingness to overrule them, which it explicitly avoided doing. *See Hercules, Inc. v. Stevens Shipping Co., Inc.,* 698 F.2d at 737 n. 25. Obviously, if *White City's* standard of reasonable care applies in this personal injury case, rather than the *East–West* warranty theory, the claim for indemnity would fail under Section 745 because it would then arise "by reason of the same subject matter" as the plaintiff's claim. Whether the Fifth Circuit will once and for all come to such a decision is not within this Court's power to forecast. Perhaps this Court's decision will result in a new debate of the issue by the Court of Appeals.

The continued vitality of *White City* also deserves comment. This 1932 decision applied a reasonable care standard in a tort claim for property damage. It did not reject a warranty theory or even discuss a warranty theory; the Court did not have that issue before it. *White City* did not involve joint tortfeasors or theories of indemnity, and that the case did not involve a personal injury claim seems noteworthy, too. Thus, one may reasonably question whether the emphasis placed on this decision by scholars and others is well-founded. *Stevens v. The White City,* 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699 (1932); *see Verrett v. McDonough Marine Service,* 705 F.2d 1437 (5th Cir.1983).

6. Tidewater's argument that, because the government hasn't provided facts to support imposition of liability for a breach of the warranty, it is entitled to summary judgment is a meritless attempt to shift the burden of proof. Tidewater ignores that the party moving for summary judgment has the burden of establishing that there are no facts which could support a finding that it breached the warranty. It has not done so on this record. Tidewater's argument is no doubt driven by the fact that the counter-claim mentions negligence concepts rather than contract.